1450

Nancy C. HAMILTON, Appellant, v. J. D. DAVIS, Kathleen Davis and Christian D. Mueller, of whom J. D. and Kathleen Davis, Respondents.

(389 S. E. (2d) 297)

Court of Appeals

*Mitchell K. Byrd,* of *Byrd & Byrd,* Rock Hill, *for appellant.*

*Beverly A. Carroll,* of *Roddey, Carpenter & White,* Rock Hill, *for respondents.*

Heard Dec. 11, 1989.

Decided Jan. 22, 1990.

SHAW, Judge:

Appellant, Nancy C. Hamilton, sued Christian D. Mueller and respondents, J. D. and Kathleen Davis, seeking damages for personal injuries caused by Mueller. Hamilton obtained a default judgment against Mueller. The Davises successfully moved to set aside the default entered against them. Subsequently, the trial court granted the Davises' motion for summary judgment, dismissing the suit against them. Hamilton appeals the orders setting aside entry of default and granting summary judgment. We affirm.

Mueller was engaged by the Davises to manage their rental properties including three laundromats, an apartment house and a motel and mobile home park. The job included maintenance of the premises and collection of rents. As a part of his maintenance responsibility, Mueller was charged with ensuring the grounds around the property were cleaned up. Mr. Davis stated Mueller did not have the authority to hire or fire employees on his behalf.

At her deposition, Hamilton stated Mueller hired her as resident manager for the Patrick House, one of the properties owned by the Davises and managed by Mueller. In exchange for her services, which included maintaining the grounds, Hamilton lived on the premises rent free. Mr. Davis stated he had no knowledge of the agreement between Mueller and Hamilton.

On June 19, 1986, Mueller and some family members came to the Patrick House to load and haul debris that Hamilton had stacked up from her yard work. As Mueller was sitting in the truck about to leave, Hamilton stepped up to the truck and stood talking to Mueller, braced between the open truck door and the car parked next to it. In her deposition, Hamilton described the incident as follows:

> I was braced in between the door and the parked car, and Chris started laughing and dropped the gear into reverse and smeared me the full length of the car.... That's when he started laughing and dropped the truck in reverse. His wife started screaming at him. In fact, when I saw what he was going to do with the gear shift, I screamed, 'don't do that Chris,' and Mary started screaming at the same time, 'what are you thinking about, Chris?' And I mean, after he drug me—after they even pulled out onto Oakland, you could still hear Mary screaming at him. The next day ... Mary said, 'Cathy, how are you after that dumb stunt Chris pulled yesterday?'

When asked the reasoning behind Mueller's actions, Hamilton responded, "I really don't know because to me that was rather a dumb stunt."

On February 16, 1988, a hearing was held on the Davises' motion to set aside entry of default. On February 25, 1988, Judge Robert L. McFadden issued an order setting aside entry of default pursuant to S.C.R.C.P. Rule 55(c). Judge McFadden ruled the attempted service violated S.C.R.C.P. 4(d)(1) in that it was made neither on the Davises personally nor at their dwelling and there was no evidence Mueller was an agent authorized by appointment or law to receive service of process on their behalf.

Hamilton contends Judge McFadden erred in setting aside the entry of default arguing service was proper. S.C.R.C.P. 4(d)(1) provides that service shall be made as follows:

Upon an individual other than a minor under the age of 14 years or an incompetent person, by delivering a copy of the summons and complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy to an agent authorized by appointment or by law to receive service of process.

It is undisputed the summons and complaint were not delivered to either of the Davises and were not served at their dwelling house or usual place of abode. Hamilton argues, however, the summons and complaint were properly served on Mueller as agent for the Davises. The Davises denied receiving notice of the suit until the matter was already in default and stated that Mueller was not an authorized agent for service of process.

S.C.R.C.P. 4(d)(1), like its federal counterpart, Rule 4(d)(1) of the Federal Rules of Civil Procedure, provides for service upon an agent only if authorized by appointment or by law. Federal cases dealing with agency by appointment indicate an actual appointment for the specific purpose of receiving process normally is expected and the mere fact a person may be considered to act as defendant's agent for some purpose does not necessarily mean that the person has authority to receive process. The courts must look to the circumstances surrounding the relationship and find authority which is either express or implied from the type of relationship between the defendant and the alleged agent. Claims by one to possess authority to receive process or actual acceptance of process by an alleged agent will not necessarily bind the defendant. There must be evidence the defendant intended to confer such authority.[1] 4A C. Wright and A. Miller, *Federal Practice and Procedure*, § 1097; 62 Am. Jur. (2d) *Process* § 47 (1972).

---

[1] Several federal cases dealing with the question of an agent authorized by law to receive process have intimated that the language refers to an agent authorized by legislative enactment to receive process. 4A C. Wright and A. Miller, *Federal Practice and Procedure*, § 1098.

There is no evidence that Mueller was an authorized agent in the case at hand. The fact that Mueller may have worked for the Davises is not determinative. We therefore hold Judge McFadden properly set aside the entry of default.

Hamilton further contends Judge McFadden erred in ■ granting the Davises' motion for summary judgment.

She asserts the acts of Mueller, even if intentional, were within the scope of his employment and therefore the Davises are liable under the doctrine of respondeat superior. We disagree.

In her argument, Hamilton relies on the cases of *Jones v. Elbert*, 211 S. C. 553, 34 S. E. (2d) 796 (1945) and *Crittenden v. Thompson-Walker*, 288 S. C. 112, 341 S. E. (2d) 385 (Ct. App. 1986). In *Jones*, 34 S. E. (2d) at 799, our Supreme Court held:

> Under the doctrine of respondeat superior, it is generally held that the master is liable for the wrongful acts of his servant while acting as such within the scope of his employment. The principle is adhered to that an act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business.

In *Crittenden*, 341 S. E. (2d) at 387, this court held, under the test applied in *Jones:*

> ... [I]t is not necessary to find the particular act creating liability was within the servant's authority. Nor is it necessary that the assault should have been made as a means or for the purpose of performing the work the servant was employed to do.

*Jones* and *Crittenden*, however, are inapposite to the case at hand. *Jones* involved a situation in which a dairy farm's general manager assaulted the owner and general manager of a company contracted to provide a refrigeration system. The assault resulted from a dispute arising over problems with the system. *Crittenden* involved an assault performed by an employee in an attempt to collect a debt of the business. The distinguishing factor is that the assaults in *Jones* and *Crittenden* occurred, not merely in connection with the

master's business, but with the purpose of in some way furthering the master's business. Both *Jones* and *Crittenden* quote the following passage from *Cantrell v. Claussen's Bakery*, 172 S. C. 490, 174 S. E. 438 (1934):

> If the servant is doing some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment, although he may exceed his authority.

We think the case of *Lane v. Modern Music, Inc.*, 244 S. C. 299, 136 S. E. (2d) 713 (1964) decided by our Supreme Court is directly on point and controlling. There it was stated:

> It is well settled that the liability of the master for the torts of his servant arises only when the servant is acting about the master's business, within the scope of his employment; if he is upon his own business acting outside of his employment the master is not liable. An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business.
>
> The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable thereof. Under these circumstances the servant alone is liable for the injuries inflicted. If a servant steps aside from the master's business for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended; *and this is so no matter how short the time*, and the master is not liable for his acts during such time. (Emphasis added.)
>
> The general rule is that an employer is not liable to a customer, patron or other person for an assault arising out of acts of mischief or horseplay indulged in by the employee unless it is shown that the employer was or should have been so aware of the propensities of the employee in that direction as to make him negligent for having retained him in the employ, since such acts are not to be considered incidental to the work which he is

hired to perform but are of a personal nature, indulged in for the personal amusement of the employee and not in furtherance of the master's interest.

While Mueller was certainly in the act of furthering his master's business in collecting the debris and removing it from the yard, he momentarily stepped away from that business when he committed the assault on Hamilton. The assault was clearly of a personal nature, indulged in for his own personal amusement.[2] We therefore hold the trial judge properly granted the motion for summary judgment under the facts of this case.

For the foregoing reasons, the orders below are

Affirmed.

BELL and CURETON, JJ., concur.

---

[2] We are not unmindful of the principle that, where there is doubt as to whether the servant is acting within the scope of employment in injuring a third person, the doubt will be resolved against the master, at least to the extent of requiring the issue to be submitted to the jury. *Crittenden,* 341 S. E. (2d) at 387. However, there is no doubt in the case at hand. The record before us contains evidence indicating the assault arose out of acts of mischief and horseplay. Indeed, there is no evidence the assault occurred for any other reason and there is certainly no evidence it occurred in furtherance of the master's business.