836 P.2d 81

**Joseph Lee WOODS, Claimant–Appellant,**

v.

**ASPLUNDH TREE EXPERT COMPANY, and National Union Fire Insurance Co., Respondents–Appellees.**

**No. 13298.**

Court of Appeals of New Mexico.

April 21, 1992.

Certiorari Denied May 28, 1992.

Roger A. Wagman, Law Office of Roger A. Wagman, Albuquerque, for claimant-appellant.

Valerie A. Mackie Huling, Klecan, Childress & Huling, Albuquerque, for respondents-appellees.

## OPINION

MINZNER, Judge.

Joseph Woods (Woods) appeals from a decision by the Workers' Compensation Administration denying his claim for benefits from Asplundh Tree Expert Company (Asplundh). Workers' Compensation Judge

Gregory Griego concluded that Woods was not entitled to compensation, because the accident in which he was injured occurred as a result of "wrestling horseplay" with a Public Service Company (PNM) employee, and thus neither arose out of nor occurred in the course of his employment. *See* NMSA 1978, § 52–1–28(A)(1) (Repl.Pamp.1991).

Woods contends that Judge Griego misapplied the rule he adopted. Alternatively, Woods contends that (1) Judge Griego erred in adopting that rule; (2) he should have adopted a different test; and (3) under that test, he should have awarded Woods benefits.

We conclude that Woods would have been entitled to workers' compensation benefits had he satisfied the rule Judge Griego adopted or the test for which Woods contends on appeal. We also conclude that Judge Griego correctly applied the rule he adopted. Finally, we conclude that the findings made as well as those rejected support Judge Griego's decision, even under the test for which Woods contends on appeal. Therefore, we affirm Judge Griego's decision.

## I.

### BACKGROUND.

Asplundh had a contractual relationship with PNM. Under that contract, it trimmed and removed trees away from power lines. Asplundh employees worked exclusively for PNM. Woods began and ended each day at PNM's Bernalillo Service Center. He picked up work orders there and returned them at the end of the day. On September 21, 1990, at about 3:45 p.m., Sean Patchell (Patchell), a PNM employee, pushed Thomas Lopez (Lopez) as he was walking through a hallway at the Center with Woods. Lopez, who testified that Patchell used a "blocking" move like that of a football player, bounced against the wall. Lopez then turned away and entered another room. Immediately thereafter, as Woods was putting down his lunch bucket, Patchell shoved him into the bulletin board in the hallway, using a similar move. Un-

like Lopez, Woods turned toward Patchell, each man grabbed the other, and they wrestled for a brief period. Apparently they both fell. Woods suffered a broken leg as a result of the fall.

Judge Griego made findings and conclusions and wrote a memorandum opinion, which is included in the record. The pertinent findings of fact and conclusions of law he adopted are as follows:

*Findings of Fact*

7. The accident * * * did not arise his [sic] employment with Employer. The risk of accident was not incident to Worker's employment.

8. The accident * * * was not in the course of Worker's employment with Employer. The accident was not at a time, place, and under circumstances incident to Worker's employment.

$\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

35. Worker's accident and injury were the result of horseplay.

$\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

37. Horseplay * * * was contrary to Employer's policies and was not tolerated.

*Conclusions of Law*

1. Worker was not in an accident arising out of employment with Employer on 9/21/90.

2. Worker was not in an accident in the course of employment * * * *

$\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

14. Worker is not entitled to any benefits. This is because the injury here arose from horseplay which was an isolated occurrence, and Worker was a knowing participant in the horseplay.

In his memorandum opinion, Judge Griego surveyed the related case law in other jurisdictions. He identified rules courts have developed to analyze accidental injuries suffered by workers in the course of horseplay at work and tests commentators have suggested as improvements over the existing case law.

■ Describing the rule followed in New York as the majority view, Judge Griego applied that analysis to Woods' claim. He noted in his memorandum opinion that the evidence showed that horseplay was common and largely tolerated at PNM and that PNM personnel worked frequently with Asplundh personnel. However, the evidence also showed that horseplay at Asplundh was "not common," and Asplundh "employees had a sense that it would not be tolerated." For example, the only evidence of extreme horseplay at Asplundh was ten years earlier and seen as a workplace "legend." Judge Griego concluded that this evidence was inconsistent with a work climate where dangerous horseplay was common. He concluded that Asplundh policies controlled. Therefore, applying the New York rule, which allows horseplay participants to recover if the horseplay can be shown to be a regular incident of employment, Judge Griego concluded that the incident was an isolated one at Asplundh, and Woods could not recover.

## II.

## DISCUSSION.

Initially, "[j]ust as malicious assaults by co-employees were ruled out as intentional and personal, so sportive assaults were treated as something foreign to the inherent risks of the employment." 1A Arthur Larson, *Workmen's Compensation Law* § 23.10, at 5–181 (1990) [hereinafter Larson]. In 1920, the New York Court of Appeals took a different approach. *Id.; see Leonbruno v. Champlain Silk Mills*, 229 N.Y. 470, 128 N.E. 711 (1920) (acknowledging a worker's right to compensation for an eye injury that occurred when coworker, in sport, threw an apple at a third employee). In *Leonbruno*, Judge (later Justice) Cardozo held that the accident was one " 'arising out of and in the course of employment,' within the meaning of the [workmen's compensation] statute." *Id.*

The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk.

*Id.*, 128 N.E. at 712. "[T]his view eventually won the ascendancy in non-participating victim cases." *Larson* § 23.10, at 5–182.

In dealing with cases in which the victim participated in the horseplay, however, courts have not reached consensus on the proper analysis to apply. Some jurisdictions deny recovery to any participant. *See generally* Larson § 23.30 (discussing the "aggressor defense"). In others, a participant may recover if he or she can establish that the activity in which the injury occurred had become a regular incident of the employment, rather than an isolated act. *See generally id.* § 23.41 (discussing the "New York rule").

An early commentator, analogizing horseplay cases to assault cases, argued against distinguishing participants from non-participants and against distinguishing instigators or aggressors from other participants. *See, e.g.,* Samuel B. Horovitz, *Injury and Death Under Workmen's Compensation Laws* 110–12 (1944); Samuel B. Horovitz, *Workmen's Compensation: Half Century of Judicial Developments*, 41 Neb.L.Rev. 1, 25–28 (1961). "In short, horseplay is a risk incidental to employment; who is to blame for the risk, while important in tort cases, has no relevancy in workmen's compensation cases." *Id.* at 28 (footnote omitted). A contemporary commentator attributes to Mr. Horovitz "[t]he view that the instigator should be treated the same as the non-participant, since it is the conditions of the employment that induce the horseplay[,]" Larson § 23.20, at 5–183, and characterizes that view as an alternative way of "break[ing] down the * * * broad old rule of non-liability to participants." *Id.* § 23.50, at 5–197.

Although the "generalization that the question of participation is immaterial in all circumstances" lacks case law support,

Larson § 23.50, at 5–197, the cases from other jurisdictions do reflect a trend against the rule denying recovery solely on the basis of participation and toward the elimination of distinctions based on fault. For example, the New York rule supports at least one of the cases on which Mr. Horovitz relied in arguing that courts should eliminate distinctions based on fault. *See Stark v. State Indus. Accident Comm'n*, 103 Or. 80, 204 P. 151 (1922); *see also* Larson § 23.50, at 5–195 to –196.

In apparent recognition of this trend, Professor Larson has formulated a multifactor test. Under this test, he suggests that a participant "should recover, if, by ordinary course-of-employment standards, his indulgence in horseplay does not amount to a substantial deviation from the employment." *Id.* § 23.20, at 5–183; *see also* § 23.00; §§ 23.60–23.66 (discussing, as a "suggested solution," the course of employment test).

As the Arizona Court of Appeals has noted, the course of employment test extends the New York rule, *see Jaimes v. Industrial Comm'n*, 163 Ariz. 307, 787 P.2d 1103 (Ct.App.1990), and the most recent case law favors the course of employment test. In fact, one of the jurisdictions which appeared to favor the view that courts should abolish the distinction between non-participants and participants, *see* Larson § 23.50, at 5–195 n. 22, now has adopted the course of employment test. In *Petrie v. General Motors Corp.*, 187 Mich. App. 198, 466 N.W.2d 714, 716 (1991), the Michigan Court of Appeals, citing *Crilly v. Ballou*, 353 Mich. 303, 91 N.W.2d 493 (1958), nevertheless found "guidance in Professor Larson's discussion of this issue" and applied his multi-factor test.

On appeal, Woods contends that Judge Griego misapplied the New York rule and, alternatively, erred in adopting it. He implicitly argues that we should adopt the course of employment test and expressly argues that this test supports his claim for compensation. We conclude that both the New York rule and the course of employment test are consistent with New Mexico law and that a worker should be able to

prevail in New Mexico if he or she can factually satisfy either one. We also conclude that Judge Griego correctly applied the New York rule, and under New Mexico law as elaborated on by that rule, his decision denying benefits should be affirmed. Finally, we conclude that Judge Griego's decision is correct, even under the course of employment test. Therefore, under New Mexico law as elaborated on by that test, Judge Griego's decision should be affirmed.

### A. New Mexico.

In New Mexico, our cases have taken a broad view of both relevant requirements: that an accident both "arise out of" and "in the course of" employment. *See generally Evans v. Valley Diesel*, 111 N.M. 556, 807 P.2d 740 (1991) (holding evidence that a worker was injured while he was pushing a personal vehicle, on which his employer allowed him to work in his spare time, into his employer's place of business created an issue of fact regarding both requirements). Neither the New York rule nor the course of employment test conflicts with that approach, and each seems to reflect a sensible balance between the respective interests involved.

■ Under both the New York rule and the course of employment test, participation is relevant but not dispositive. We believe that the extent and nature of a victim's participation are relevant factors, so that an employer is responsible only for accidents resulting from horseplay of which the employer had actual or constructive notice or which the employer had reason to foresee. Either notice or reason to foresee should provide an employer a sufficient opportunity to take appropriate action in drafting personnel rules and pricing its product or services. *See Crilly v. Ballou*, 91 N.W.2d at 505–06 (inevitable tensions of the workplace are part of the conditions that produce the product, and therefore should be calculated as part of the product's cost).

The sheer number of workers' compensation cases that involve horseplay, and the variety of factual circumstances surround-

ing the injuries, indicate that horseplay occurs on a daily basis throughout the workplace. The breadth of the New Mexico view, as shown in *Evans,* would certainly accommodate an award of compensation under many horseplay circumstances. However, the breadth of the New Mexico view may not provide sufficient guidance to the Workers' Compensation Administration in making findings and conclusions or to litigants in proposing them. Accordingly, the use of a more precise analytical framework, such as that expressed in the New York rule or course of employment test, would not be inconsistent with New Mexico law.

Judge Griego's use of the New York rule suggests he found that analysis of practical use in making findings and conclusions regarding the requirements imposed by Section 52–1–28(A). Because that rule is consistent with New Mexico case law, we approve its use.

We are persuaded that the course of employment test is sufficiently similar to the New York rule to provide an equally helpful framework in which Judge Griego might have evaluated Woods' injury and to have made the necessary findings and conclusions pursuant to Section 52–1–28(A). For this reason, we also recognize the validity of the course of employment test in New Mexico. Nevertheless, for the reasons that follow, Judge Griego's decision is correct under either the New York rule or the course of employment test, and should be affirmed.

### B. The New York Rule.

The case that established the New York rule was *Industrial Commissioner v. McCarthy,* 295 N.Y. 443, 68 N.E.2d 434 (1946). In *McCarthy,* the issue was whether a waiter's injury arose out of and in the course of employment. The custom at this particular restaurant was for the waiters to jostle or tap one another as they passed. The injury occurred when one waiter attempted to land a friendly tap on another, and when the other waiter turned to avoid the blow, a knife he was carrying accidentally stuck the first waiter in the side,

penetrating his heart and killing him. The court noted that the risks incident to this employment included risks associated with the friendly jostling customary to the restaurant. Therefore, the fatal injury arose out of and in the course of employment, and the award of compensation was affirmed. *See also Aucompaugh v. General Elec.,* 111 A.D.2d 1073, 490 N.Y.S.2d 647 (1985) (award of benefits to worker injured when he attempted to perform a handstand on a swivel chair was upheld; court noted that it was customary for workers to do physical exercises during work breaks; therefore, the injury was sufficiently related to employment to be compensable).

Applying the New York rule, the court in *Hodges v. Workers' Compensation Appeals Board,* 82 Cal.App.3d 894, 147 Cal. Rptr. 546 (1978), reached the conclusion that a sparring match resulting in a worker's leg injury was not a regular incident of employment. Although the record established that workers occasionally threw a football or tennis ball around at work, "[t]here [was] no evidence that any employee had ever before engaged in sparring." *Id.,* 147 Cal.Rptr. at 551. The court also specifically rejected the worker's suggestion that the court revise the horseplay rule to incorporate Larson's course of employment approach, citing controlling supreme court precedent, but also noting that application of the course of employment approach would not alter the outcome of the case.

We conclude that there is substantial evidence in the record as a whole, *see Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 767 P.2d 363 (Ct.App.1988), to support Judge Griego's findings, and his findings and conclusions support the result he reached under both the New York rule and Section 52–1–28(A)(1). Although there was some evidence that PNM linemen engaged in some kinds of horseplay during idle periods, the evidence in the record as a whole established that wrestling was unusual and was discouraged by PNM, as well as by Asplundh. There was no evidence of horseplay between PNM and Asplundh employees, and no evidence that the

nature of the contacts between the two groups of employees might be expected to include some horseplay. There is sufficient evidence in the record as a whole to support the finding that wrestling horseplay was not a regular incident of Woods' employment. Thus, Judge Griego correctly applied the New York rule, and properly denied benefits under Section 52–1–28(A)(1).

### C. The Course of Employment Test.

In using the course of employment test, the fact-finder should consider:

(1) the extent and seriousness of the deviaton [sic], (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay.

Larson § 23.00; *see also id.* § 23.60. After considering these factors, the fact-finder must determine whether the accident occurred during a substantial deviation from the course of employment. *See Jaimes,* 787 P.2d at 1106.

The worker in *Jaimes* was injured when he fell out of and was run over by a golf cart. There was some evidence that established that the three workers riding in the cart were horsing around when the accident happened. The court noted that crowding three laborers into a small golf cart was conducive to horseplay. Moreover, the incident occurred when the workers were engaged in work-related travel, that is, traveling from one hole to the next. Therefore, the court concluded that the horseplay was not a substantial deviation from the course of employment. *Id.* at 1106. *See also Prows v. Indus. Comm'n,* 610 P.2d 1362 (Utah 1980) (course of employment test used to award compensation to worker injured in a rubber band fight); *Bruns Volkswagen, Inc. v. Department of Indus., Labor & Human Relations,* 110 Wis.2d 319, 328 N.W.2d 886 (Ct.App.1982) (course of employment test used to affirm award of benefits to worker injured during a brief wrestling bout that occurred when worker and co-worker were waiting at counter for repair parts).

The Arizona Court of Appeals noted in *Jaimes* that the course of employment test extends the New York rule in two ways. First, "even if not a regular incident of employment, horseplay is covered if it is characteristic of the type of employment[.]" *Id.,* 787 P.2d at 1106. Second, "the test extends coverage to *isolated acts* of horseplay unless the deviation is substantial[.]" *Id.*

*J & W Janitorial Co. v. Industrial Commission,* 661 P.2d 949 (Utah 1983) provides what may be an extreme example of an accident determined to be a substantial deviation. The worker in this case, a member of a janitorial crew assigned to clean a commercial bakery, climbed into an industrial mixer after the night's work was complete to hide from his co-workers. One of the other workers accidentally activated the mixer while the worker was inside, killing him. The employer appealed the award of death benefits, arguing that the Commission had erroneously determined that the employee's injury arose out of or in the course of his employment. The employer pointed out that it was not ever necessary to climb into the mixer to clean it, and, at the time of the accident, the evening's work was complete and the workers were merely hanging around, killing time. The reviewing court concluded that the facts of this incident did not meet the criteria established by the course of employment test. Specifically, the accident occurred when the crew had no work-related reason to be in the bakery, and no work-related duty was being performed at the time of the accident. Furthermore, there was no evidence that horseplay was a usual practice on the job, nor was the job the type of employment that induced horseplay (i.e., there were no lulls in activity or shared tasks that would encourage horseplay). *Cf. Bruns Volkswagen,* 328 N.W.2d at 889 ("[T]he wrestling was of short duration, impulsive, and occurred during a natural lull in service for the employer. Horseplay generally, due to the nature of the work and the ages of the employees, was fairly common and had gone undisciplined in the shop.").

Although the course of employment test extends the New York rule, Judge Griego's findings, as well as the effect of what he refused to find, establish that wrestling horseplay was not characteristic of Woods' employment, Woods' employer had no knowledge that horseplay was part of the work environment, and the accident occurred during a substantial deviation from employment. *See Empire W. Cos. v. Albuquerque Testing Lab., Inc.,* 110 N.M. 790, 800 P.2d 725 (1990) (refusal to make a finding is equivalent to a finding against the party with the burden of proof). Consequently, Judge Griego made the findings necessary to deny liability under the last three elements of the course of employment test. As a result, worker failed to persuade the trier of fact of his view of the evidence and did not establish that the accident in which he was injured arose out of and within the course of his employment under the course of employment test. *See Hodges,* 147 Cal.Rptr. at 552 (concluding that worker was not entitled to recover under the course of employment test); *see also J & W Janitorial Co.,* 661 P.2d at 950 (accident involved a substantial deviation from employment); *cf. Jaimes,* 787 P.2d at 1106 (ultimate question under the course of employment test is a question of law).

### III.

### CONCLUSION.

We recognize that both the New York rule and the course of employment test may be valid approaches under Section 52–1–28(A)(1) to determine whether an accidental injury resulting from horseplay arose out of and occurred within the scope of employment as those terms are used in the statute. However, because Woods did not persuade Judge Griego of the factual basis necessary to prevail under either test, Judge Griego's decision is affirmed.

IT IS SO ORDERED.

PICKARD and FLORES, JJ., concur.