855 P.2d 136

Domingo **RIVERA**, Plaintiff–Appellant,

v.

**NEW MEXICO HIGHWAY AND TRANSPORTATION DEPARTMENT**, Defendant–Appellee.

No. 14283.

Court of Appeals of New Mexico.

April 26, 1993.

Certiorari Denied June 17, 1993.

Mario A. Esparza, Las Cruces, for plaintiff-appellant.

Benjamin Silva, Jr., Earl E. DeBrine, Jr., Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendant-appellee.

## OPINION

PICKARD, Judge.

Plaintiff appeals from the summary judgment entered in favor of Defendant in this Tort Claims Act case. Plaintiff was injured when he was working as a laborer for a construction company that was engaged in resurfacing a highway. Due to the temporary unavailability of resurfacing material, there was a lull in the work. During this lull, Defendant's employee, who was employed to supervise the highway project, threw a container of water on Plaintiff. Plaintiff either jumped out of the way or grabbed his own container of water to retaliate. In either case, he ran into the roadway and into an oncoming vehicle. Defendant had a strict policy prohibiting horseplay, which its employee violated by throwing the water on Plaintiff. The trial court granted summary judgment because Defendant's employee's act was not within the scope of his duties and, therefore, immunity was not waived under the Tort Claims Act. We agree with that result and affirm.

The general rule is that governmental entities such as the New Mexico Highway and Transportation Department here are immune from liability unless such immunity is waived. NMSA 1978, § 41-4-4(A) (Repl.Pamp.1989). Immunity is waived "for damages ... caused by the negligence of public employees while acting within the scope of their duties in the maintenance of ... any ... highway." NMSA 1978, § 41-4-11(A) (Repl.Pamp.1989). Defendant was engaged in maintaining the highway, and its employee was a public employee. The issue is whether he was acting within the scope of his duties.

"Scope of duties" is defined in the Tort Claims Act as "performing any duties which a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." NMSA 1978, § 41-4-3(F) (Repl.Pamp.1989). Defendant initially contends that the trial court should be affirmed because Plaintiff neither alleged in his complaint nor made any showing that throwing the water was "requested, required or authorized" by Defendant.

We recently had occasion to comment that "scope of duties" as used in the Tort Claims Act may or may not be identical to the "course and scope of employment" test used to determine common-law respondeat superior claims. *Narney v. Daniels*, 115 N.M. 41, 48, 846 P.2d 347, 354 (Ct.App. 1992), *cert. denied*, 114 N.M. 720, 845 P.2d 814 (1993). In this case, as in *Narney*, we find it unnecessary to decide to what precise extent these concepts are similar.

The Tort Claims Act was enacted to ameliorate the harshness of the rule of immunity for certain acts of governmental entities when the same acts by private parties would yield liability. *See* NMSA 1978, § 41–4–2(A) (Repl.Pamp.1989). Liability under the Act is based upon traditional tort concepts of duty and standard of care. *See* NMSA 1978, § 41–4–2(B) (Repl.Pamp.1989). Thus, we infer that governmental entities would not be liable for acts of employees when the entities' private counterparts would not be liable because the private employees were not acting in the course and scope of employment. For this reason, and because there is a relative wealth of law on the issue of course and scope of employment as compared to the issue of "scope of duties" under the Tort Claims Act, we look to authority on course and scope of employment. We find that the virtually unchallenged rule, in New Mexico and elsewhere, would support the conclusion that the horseplay in this case did not take place in the course and scope of Defendant's employee's employment. Thus, we need not decide whether to adopt the narrow definition of "scope of duties" advocated by Defendant.

Generally, whether an employee is acting in the course and scope of employment is a question of fact. *Narney*, 115 N.M. at 48, 846 P.2d at 354. However, when no reasonable trier of fact could conclude that an employee is acting in the course and scope of employment, summary judgment is properly granted. *Id.* at 49–50, 846 P.2d at 355–56; *cf. Edens v. New Mexico Health & Social Servs. Dep't*, 89 N.M. 60, 62, 547 P.2d 65, 67 (1976) (in workers' compensation case, when historical facts are undisputed, issue of whether accident arose out of and in the course of employment is one of law).

In *Narney*, recognizing that "course and scope of employment" has been variously defined, we utilized the test found in the uniform jury instructions as supplemented by the test found in an out-of-state case with facts similar to those in *Narney*. *Narney*, 115 N.M. at 48–50, 846 P.2d at 354–56. The jury instruction would find an act to be within the scope of employment if it is incidental to the employer's business assigned to the employee and it was done while the employee was working "with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee." SCRA 1986, 13–407. Measured by this standard, it appears that the act of throwing water on Plaintiff would not be within the scope of employment because it was not done with a view of furthering the employer's interest and did arise from purely personal motives.

Cases from other jurisdictions support this result. In *Lane v. Modern Music, Inc.*, 244 S.C. 299, 136 S.E.2d 713, 717 (1964), the court said:

> The general rule is that an employer is not liable to a customer, patron or other person for an assault arising out of acts of mischief or horseplay indulged in by the employee unless it is shown that the employer was or should have been so aware of the propensities of the employee in that direction as to make him negligent for having retained him in the employ, since such acts are not to be considered incidental to the work which he is hired to perform but are of a personal nature, indulged in for the personal amusement of the employee and not in furtherance of the master's interest.

> If the servant does a mischievous act merely to frighten or perpetrate a joke on a third person, and the act is entirely disconnected from the purpose of employment, the master generally is not liable therefor.

In *Lane*, the employee released what appeared to be a mongoose from a cage, thus frightening a customer. The court ruled that a directed verdict for the defendant should have been granted. Similar results were obtained for similar reasons in *Prairie Livestock Co. v. Chandler*, 325 So.2d 908 (Miss.1976), in which the injury was caused by the employee's playfully sitting in someone's lap, and in *Beeson v. Kelran Constructors, Inc.*, 43 Colo.App. 505, 608 P.2d 369 (1979), *cert. denied*, (Colo.1980), in which the death was caused by an auto accident caused by the employee's "moon-

ing" the driver of the car that hit decedent. *See also Hollinger v. Jane C. Stormont Hosp. & Training Sch. for Nurses,* 2 Kan. App.2d 302, 578 P.2d 1121 (1978); *Hamilton v. Davis,* 300 S.C. 411, 389 S.E.2d 297 (App.1990); Restatement (Second) Agency § 235 (1958) (servant is not acting within scope of employment if servant is motivated solely by personal concerns).

We are not aware of any cases in the common-law tort area in which the employer was liable when the horseplay, mischief, or assault was not connected in some way to the employment. Thus, we find cases such as *Andrews v. Norvell,* 65 Ga.App. 241, 15 S.E.2d 808 (1941), distinguishable. In that case, the employee worked for a bar that tolerated and perhaps even encouraged the pranks that employees played; they were part of the atmosphere of the establishment.

*Hamilton,* 389 S.E.2d at 299–300, illustrates the types of assaults that are connected with employment and those that are not. Citing *Jones v. Elbert,* 211 S.C. 553, 34 S.E.2d 796 (1945), and *Crittenden v. Thompson–Walker Co.,* 288 S.C. 112, 341 S.E.2d 385 (App.1986), the *Hamilton* court explained that assaults committed in a dispute over goods delivered to the employer or in the attempt to collect a debt would be in the course of employment because they would be furthering the master's business, although negligently or beyond the employees' authority. *See also Gonzales v. Southwest Sec. & Protection Agency,* 100 N.M. 54, 55–56, 665 P.2d 810, 811–12 (Ct. App.1983). On the other hand, the act at issue in *Hamilton* was pure horseplay. The facts in this case are more like *Hamilton* than *Jones* or *Crittenden.*

There are no facts in this case tending to show that the Defendant's business was being served by its employee's throwing water on Plaintiff. Plaintiff relies on the testimony of one witness who had seen this employee twice before throw water on people and who had seen this employee together with another employee throw firecrackers. These instances do not show that horseplay was furthering the Defendant's interests as in *Jones* or *Crittenden.*

Nor do we believe that these isolated instances are sufficient to show the sort of tolerance or ratification present in *Andrews.*

This distinction between those acts that arguably further the employer's interest and those that cannot be seen as remotely furthering the employer's interest answers Plaintiff's reliance on *Silva v. State,* 106 N.M. 472, 745 P.2d 380 (1987). Plaintiff points to the portion of that opinion in which the Supreme Court stated that the failure of the employee to conduct himself in compliance with practices adopted for the purpose of protecting people like the plaintiff constitutes negligence. *See id.* at 478, 745 P.2d at 386. Plaintiff appears to be contending that Defendant's employee's violation of the prohibition on horseplay shows that the employee was acting in the course of his employment. We recently rejected a similar contention. *See Cox v. Chino Mines,* 115 N.M. 335, 339, 850 P.2d 1038, 1041–1042 (Ct.App.1993). Moreover, we find *Silva* distinguishable. In that case, the employee was performing duties of the employment in caring for a prisoner; in not following the standards, he was acting negligently. *Silva* is similar to the assault cases noted above, in which the employees were trying to further the employers' business but were doing it negligently.

Plaintiff finally relies on *Woods v. Asplundh Tree Expert Co.,* 114 N.M. 162, 836 P.2d 81 (Ct.App.), *cert. denied,* 113 N.M. 744, 832 P.2d 1223 (1992). However, *Woods* does not help Plaintiff. *Woods* was a workers' compensation case. The rationale for allowing workers' compensation benefits for accidents arising from horseplay is unique to workers' compensation cases.

The basic purpose of workers' compensation benefits is to ensure that industry carries the burden of injuries suffered by employees in the course of their employment. *Yerbich v. Heald,* 89 N.M. 67, 68, 547 P.2d 72, 73 (Ct.App.1976). Consistent with this purpose, the early horseplay cases explained that the inevitable tensions of the workplace are part of the conditions

that produce the work product. *Woods,* 114 N.M. at 164, 165, 836 P.2d at 83, 84. Thus, injury caused by horseplay that is accepted and expected in response to these tensions may be compensable. *Id.* The same rationale does not apply outside the workers' compensation context.

There being no facts in this case to show that the horseplay was part of the course and scope of Defendant's employee's employment, we hold that Defendant cannot be held liable for the employee's actions in throwing water on Plaintiff. The trial court's award of summary judgment in favor of Defendant is affirmed.

IT IS SO ORDERED.

BIVINS and HARTZ, JJ., concur.