THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Sammy Garrison Construction Company, Inc., Appellant,
v.
Frank F. Russo, Madeline E. Russo, Boru Enterprises d/b/a Brady Builders, and the Anchor Bank,
Defendants,
of whom Frank F. Russo, Madeline E. Russo, and the Anchor Bank are
Respondents.
 
 
 

Appeal From Beaufort County
 Thomas Kemmerlin, Jr., Master  In  Equity  

Unpublished Opinion No. 2006-UP-203
Heard March 8, 2006  Filed April 14, 2006   

REVERSED AND REMANDED

 
 
 
Curtis W. Dowling and Andrea C. Pope, of Columbia, for Appellant.
Barry L. Johnson, of Bluffton and David J. Parrish, of Charleston, for Respondents.
 
 
 

PER CURIAM:  Sammy Garrison Construction Company (Garrison) appeals the circuit courts dismissal of its mechanics lien on the basis it failed to serve the property owner as contemplated under section 29-5-90 of the South Carolina Code (Supp. 2005), and as a consequence of this dismissal, the circuit courts granting of attorney fees to Anchor Bank and Frank and Madeline Russo as prevailing parties.  We reverse.  
FACTS
This action arises out of the construction of improvements at Island Putt and Drive, Inc. (IPD) located in Hilton Head Island, South Carolina.  IPD is a corporation owned equally by Frank and Madeline Russo (the Russos), their nephew Mike Russo, and his wife Katherine Russo.  IPD is situated on land owned exclusively by the Russos, which it leases pursuant to a lease agreement.  The Russos are retired and live in Pennsylvania.  Mike Russo is the president of IPD and the person in charge of operating the business.    
At some point prior to this suit, the owners of IPD decided improvements should be made to the land.  To make these improvements, the Russos gave Mike Russo a special limited power of attorney for the purpose of allowing Mike Russo to execute certain loan documents on behalf of the Russos in connection with the improvements and construction.  Anchor Bank entered into a Mortgage and Security Agreement with the Russos and IPD for the project.  The mortgage contained a standard future advance clause for a construction loan, under which the amount of the mortgage was increased as the loan proceeds were released to pay the general contractors periodic draw requests as construction progressed.    
Following acquisition of the construction loan from Anchor Bank, Mike Russo contracted with Boru Enterprises, d/b/a Brady Builders (Brady), to serve as the general contractor for the improvements.  As the project neared completion, Brady discontinued paying certain subcontractors for their labor, service, or materials.  Sammy Garrison Construction Company (Garrison) was one of many subcontractors that filed a mechanics lien against the property.
The instant lawsuit involves a $257,000 draw payment check that Anchor Bank inadvertently released to Brady before a title update revealed that Garrison had filed a mechanics lien.  Anchor Bank was named as a defendant in this action due to its having a duly recorded first priority lien mortgage on the property.  Garrison, through its former legal counsel, filed a Notice and Certificate of Mechanics Lien in the amount of $177,316.40 against the Russos property.  Garrison served the notice of the mechanics lien on Mike Russo on July 8, 1999.  
Garrison filed its original Summons and Complaint on September 7, 1999.  The circuit court granted summary judgment to the Russos on the basis that proper notice had not been given concerning the mechanics lien placed on the Russos property.  However, the circuit court then rescinded the order granting summary judgment pursuant to a motion to reconsider, on September 21, 2001, and ordered a trial be held.  Testimony was taken and the circuit court again held that the Russos were not served with proper notice.  This appeal followed an unsuccessful Rule 59(e), SCRCP, motion for reconsideration.  
STANDARD OF REVIEW 
Typically, an action to foreclose a mechanics lien is an action at law in South Carolina.  Keeneys Metal Roofing, Inc. v. Palmieri, 345 S.C. 550, 553, 548 S.E.2d 900, 901 (Ct. App. 2001).  In an action at law, tried without a jury, the judges findings will not be disturbed unless they are without evidentiary support.  King v. PYA/Monarch, Inc., 317 S.C. 385, 388-89, 453 S.E.2d 885, 888 (1995).  His findings are equivalent to those of a jury in an action at law.  Id. at 389, 453 S.E.2d at 888.  However, the instant case is not a typical mechanics lien case, and comes to us in an unusual posture.  Summary judgment was denied, yet the circuit court proceeded to take evidence, not on the merits of the case, but only in connection with the summary judgment motions issue of notice and proper service.  The circuit court decided the case on the very basis encompassed in the summary judgment motion.  Therefore this case is, in reality, the granting, after taking testimony, of the defendants summary judgment motion. 
When reviewing the grant of a summary judgment motion, appellate courts apply the same standard which governs the trial court under Rule 56(c), SCRCP which states that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), SCRCP; Fleming v. Rose, 350 S.C. 488, 493, 567 S.E.2d, 857, 860 (2002).  On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below.  Willis v. Wu, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004); see also Schmidt v. Courtney, 357 S.C. 310, 317, 592 S.E.2d 326, 330 (Ct. App. 2003) (stating all ambiguities,
conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).
We need not resolve the question of the standard of review and whether we should view the instant case as an action at law or as a review of a grant of summary judgment, because we are convinced that the judgment below should be reversed, even if we were to apply the most deferential standard of review.  Having carefully reviewed the record, the evidence is susceptible of only one reasonable inference  that is, Mike Russo was the agent for the property owners in connection with the construction of improvements to the real property. 
LAW/ANALYSIS
Garrison raises several arguments before this court; however, we need only address one: the contention Garrison properly served Mike Russo as an agent with the actual authority to accept service of the mechanics lien on behalf of the property owners.  We agree and hold service under section 29-5-90 of the South Carolina Code (Supp. 2005) was proper.
Section 29-5-90 specifies that a mechanics lien must be served on the owner of the property to which the lien will attach.  Although mechanics liens are purely statutory, and the requirements of the statute must be strictly followed, our courts have recognized that the laws of agency apply to the statutes controlling the creation and perfection of mechanics liens.  See Hodge v. First Federal Sav. and Loan Assn, 267 S.C. 270, 274-75, 227 S.E.2d 310, 312 (1976) (finding the statute creating the right to a lien expressly contemplates utilization of principal-agent liability to establish the existence of liens); see also Shelley Const. Co., Inc. v. Sea Garden Hones, Inc., 287 S.C. 24, 27, 336 S.E.2d 488, 490 (Ct. App. 1985) (noting mechanics liens are purely statutory and can only be acquired and enforced in accordance with the conditions of the statute creating them).  Moreover, as mechanics lien statutes are remedial, they are to be given a liberal construction.  Clo-Car Trucking Co., Inc. v. Clifflue Estates of South Carolina, Inc., 282 S.C. 573, 575-76, 320 S.E.2d 51, 53 (Ct. App. 1984); See also 53 Am.Jur. 2d Mechanics Liens § 235 (1996) ([T]echnical requirements should not stand in the way of achieving the purposes of the mechanics lien law.  Even though a claim contains some defect or error it will be upheld where the owner is informed of the claim and not misled by it or prejudiced.).
An agency relationship may be established by evidence of actual or apparent authority.  Coburn v. Leventis, 366 S.C. 20, 39, 619 S.E.2d 437, 448 (Ct. App. 2005).  Actual authority is that which is expressly conferred upon the agent by the principal. 
Roberson v. Southern Finance of South Carolina, Inc., 365 S.C. 6, 11, 615 S.E.2d 112, 115 (2005).  The courts must look to the circumstances surrounding the relationship and find authority which is either express or implied from the type of relationship between the defendant and the purported agent.  Moore v. Simpson, 322 S.C. 518, 523, 473 S.E.2d 64, 66-67 (1996) (citing Hamilton v. Davis, 300 S.C. 411, 414, 389 S.E.2d 297, 298 (Ct. App. 1990)).  There must be evidence the defendant intended to confer authority to receive service.  Id.
The evidence shows the Russos intended to confer the actual authority upon Mike Russo to receive service.  It is important to note that this was not a case where there was simply a property owner and a separate, leasing business.[1]  Rather, the two were intermingled.  In fact, the Russos purchased the land for the sole purpose of creating IPD.  Because the Russos lived in Pennsylvania, it was natural that they have an agent acting on their behalf concerning the construction of improvements to the real property.  Mike Russo, the Russos business partner and nephew, fulfilled this need.
The record before us indisputably establishes Mike Russo as the Russos express agent.  Mike Russo managed the day-to-day affairs of the property and the business on the Russos behalf.  More to the point, he conducted all of the negotiations for the construction, including its day-to-day oversight.  The various contractors reported to Mike Russo.  Further, he negotiated and executed the contract with Brady, the general contractor.  Mr. Russo admitted Mike Russo was authorized to handle[] everything at the job site.  Additionally, although not dispositive, the Russos gave Mike Russo a specific power of attorney in order to secure loans for the improvements to the property.  See S.C. Jurisprudence Agency § 47 (1994) (Being of special and limited nature and authority, a power of attorney must be strictly construed to carry out and not defeat the purpose of appointment and to sanction only the acts clearly within its terms.) (citing Martin v. United States, 249 F.Supp. 204 (D.S.C. 1966)).  The loan for the construction and the property are inextricably linked.  The power of attorney did not specifically grant Mike Russo the license to receive service; however, we find the document along with the other circumstances surrounding the relationship confirm Mike Russos actual authority as the Russos express agent for this purpose.  
The evidence of actual authority is inescapable in light of Mr. Russos candid testimony:

 
 
 
 A:   
 [Mike Russo] handled everything at the job
 site.
 
 
 
 
 
 
 Q: 
 Did you all consult back and forth with what
 was going on?
 
 
 
 
 
 
 A:
 After the fact.
 
 
 
 
 
 
 
 . . . .
 
 
 
 
 
 
 Q:
 Well describe to me how you all worked.  I dont mean to try to put words in your
 mouth. Tell me how the job worked.
 
 
 
 
 
 
 A: 
 From time to time he would call me and say        that particular problem was or good thing was        happening and I would counsel him at that   point.  Say yes, sounds good or no.
 
 
 

 When Mike Russo became aware of the fact that liens were going to be placed on the property, he called Mr. Russo, told him liens were going to appear, and that he was going to handle them.  Mr. Russo further admitted that he left all the corporate decisions in that fashion up to Michael.  Michael was going to handle the liens.  All Mr. Russo wanted was for Mike Russo to keep him abreast of the liens.  The record is barren of any suggestion that Mike Russo was without authority to handle all construction matters, including the Garrison mechanics lien.
We categorically reject the contention that the Russos did not receive actual notice of the mechanics lien.  Mike Russo testified that he delivered the mechanics lien to the corporate lawyer, and it is unchallenged that Mike Russo informed Mr. Russo of the liens as reflected by Mr. Russos testimony.  The same evidence which shows the express agency relationship between Mike Russo and the Russos dispels any notion that the Russos did not have notice of the liens.  
Accordingly, we find service upon Mike Russo as the property owners agent was proper under section 29-5-90.  Having found that notice was proper, we do not reach Garrisons remaining assignments of error.  Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (appellate court need not address remaining issues when disposition of prior issue is dispositive).  Further, we reverse the award of attorneys fees to both Anchor Bank and the Russos under section 29-5-20(a) because they are no longer prevailing parties.  
CONCLUSION
The decision of the circuit court is 
REVERSED AND REMANDED.
HEARN, C.J., ANDERSON and KITTREDGE, JJ., concur.

[1]        At oral argument, the Russos argued that under F & D Elec. Contractors, Inc., v. Powder Coaters, Inc., 350 S.C. 454, 567 S.E.2d 842 (2002), for the mechanics lien to be enforceable against them, they must have consented to the modifications through an express or implied agreement about the specific work to be done, and the general lease provisions allowing a tenant to make improvements is not enough.  However, this argument does not take into consideration the unique situation we have in this case  the Russos are both the landowners and the tenants as part owners of IPD.  It is irrefutable that the Russos not only consented to the improvements on the property, but were a driving force behind the decision to make the improvements.