1998-NMCA-107

964 P.2d 61

**Sarah Ellen SILVERMAN,**
**Plaintiff–Appellant,**

v.

**PROGRESSIVE BROADCASTING, INC., a California Corporation d/b/a Twin Peaks Broadcasting/KLSK Radio, Ramar Communications, Inc., a New Mexico Corporation d/b/a KASY Radio a/k/a KAT Country Y103, John Sebastian, Individually, and David Sevieri, Individually, Defendants–Appellees.**

No. 18085.

Court of Appeals of New Mexico.

July 8, 1998.

Donald G. Gilpin, Law Office of Donald G. Gilpin, Albuquerque, for Plaintiff-Appellant.

Charles J. Noya, Villella, Skarsgard & Noya, P.A., Albuquerque, for Appellees Progressive Broadcasting, Sebastian, and Sevieri.

Jane Gagne, Vanzi & Gagne, P.C., Albuquerque, for Appellee Ramar Communications, Inc.

## OPINION

PICKARD, Judge.

{1} Sarah Silverman (Plaintiff) claims that her former employer's failure to promote her to a management position and its subsequent decision to terminate her was based on sex discrimination in violation of Title VII of the Civil Rights Act of 1964. Furthermore, after leaving her job, Plaintiff claims that her former managers interfered with her duties at her subsequent employment, defamed her, and caused her emotional distress. Defendants filed three motions for summary judgment on all claims. The district court granted the motions and dismissed all claims. Plaintiff appeals the district court's dismissal of her lawsuit. We affirm in part and reverse in part.

## FACTS

{2} In April 1991, Plaintiff began working as a sales account representative for Progressive Broadcasting, Inc., also known as KLSK radio (KLSK). At the time she was hired, Plaintiff claims she was promised management opportunities. In July 1991, a management position opened, and a male employee was promoted to sales manager. Plaintiff was not interviewed for the position despite her alleged qualifications and experience in radio advertising, and despite the alleged promise of management opportunities. At that time, there were no women in management positions at KLSK. Additionally, Plaintiff and other female employees were not allowed to participate in management meetings. However, male employees were allowed to participate in management meetings, even though they were not part of management.

{3} Plaintiff complained to KLSK's general manager, John Sebastian (Sebastian), and to KLSK's general sales manager, David Sevieri (Sevieri), about their failure to interview and promote her. In August 1991, Sebastian and Sevieri created a new position of national sales manager and promoted Plaintiff into it. However, the new position was eliminated in November 1991, and Plaintiff was told that she no longer had any position at KLSK.

{4} In December 1991, Plaintiff was hired as a media coordinator at Premier Distributing, which distributed Budweiser products. At that time, KLSK gave Plaintiff a good employment reference. Plaintiff's new job required her to buy air time on radio stations advertising Budweiser's products. Plaintiff did not buy air time from KLSK. On February 20, 1992, Sebastian sent an unsolicited letter on KLSK letterhead to Premier. The letter accused Plaintiff of "intentionally and maliciously" poisoning KLSK's relationship with Premier. The letter also stated that Plaintiff had spread lies, was a gossip, and suffered from tirades which caused "her to lose control and say completely off the wall things." The letter further stated that Plaintiff was let go from KLSK because she was a liar. The letter was read by Paul Windmueller, the senior vice-president of Premier Distributing and Plaintiff's supervisor. As a result of the action of Sebastian and Sevieri against Plaintiff, Windmueller felt that Premier could no longer do business with KLSK. Plaintiff claims the letter affected her ability to do her job, and Windmueller confirmed that Plaintiff was made ineffective in the media and sales market by the actions of Sebastian and Sevieri, which had a negative effect on her ability to perform her duties for Premier.

{5} Soon after the letter was written, Sevieri left KLSK and began working as the general manager for Ramar Communications, also known as KASY radio (KASY). Plaintiff would sometimes buy air time on KASY advertising Budweiser's products. In the spring of 1992, Premier was approached and asked to co-sponsor a "Hunter's Expo" show with KASY. As part of its sponsorship, Premier was required to print billboards advertising the show and displaying KASY's and Budweiser's trade logos. When the final art work was reviewed by KASY, KASY believed its logo was too small and not in accordance with the contract with the promoter, which required KASY's logo to be prominently displayed. KASY decided to withdraw from the sponsorship. The Expo's promoter decided to keep KASY as a sponsor and to drop Premier and search for another beer distributor to sponsor the show. Plaintiff believed that Sevieri was behind KASY's decision to forgo sponsorship and that he had falsely accused her of making KASY's logo too small. Plaintiff explains that Sevieri's allegations caused Premier to lose the sponsorship thereby straining her employment relationship. In October 1993, Plaintiff was terminated from Premier when the corporation went through a reorganization.

{6} Plaintiff brought suit against KLSK, Sebastian, and Sevieri, claiming that during her employment at the station, she had been discriminated against on the basis of gender. Plaintiff also brought a claim of defamation against these same three Defendants because of the letter sent to her supervisor at Premier. Plaintiff also asserted additional claims of intentional infliction of emotional distress and prima facie tort against these three Defendants. KASY radio and Sevieri were

sued over the Hunter's Expo incident which Plaintiff claimed interfered with her contractual relationship with her employer, Premier.

**STANDARD OF REVIEW**

{7} Summary judgment is proper when there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. *Ciup v. Chevron U.S.A., Inc.*, 1996–NMSC–062, ¶ 7, 122 N.M. 537, 928 P.2d 263. We consider the factual merits of each of the issues raised on appeal in the light most "favorable to support a trial on the issues because the purpose of summary judgment is not to preclude a trial on the merits if a triable issue of fact exists." *Ruiz v. Garcia*, 115 N.M. 269, 271, 850 P.2d 972, 974 (1993); *see also Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 15, 123 N.M. 752, 945 P.2d 970. All reasonable inferences are construed in favor of the party opposing summary judgment. *See Sarracino v. Martinez*, 117 N.M. 193, 194, 870 P.2d 155, 156 (Ct.App.1994).

**DISCUSSION**

A. TITLE VII

{8} Plaintiff alleges that KLSK's promotion of a male employee instead of her to a managerial position was discriminatory. Defendants KLSK, Sebastian, and Sevieri argue that Plaintiff has failed to present a prima facie case of sex discrimination under Title VII, 42 U.S.C. § 2000e–2(a) (1995). Thus, the question presented in this case is what showing a plaintiff must make to establish a prima facie case of discrimination in a failure-to-promote case.

1. Individual Capacity

■ {9} Before we discuss what prima facie showing is necessary, we note that Plaintiff has sued her former managers Sebastian and Sevieri, in their personal capacities for discriminating against her on the basis of gender. Defendants argue that it is inappropriate for Plaintiff to seek to hold her former supervisors personally liable because under Title VII the relief granted is against the employer and not against the individual employees whose actions may violate the act. We agree. As the United States Court of Appeals for the Tenth Circuit has pronounced:

[W]e agree with the majority view that, taken as a whole, the language and structure of amended Title VII continue to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors.

*Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996). Thus, we hold that the trial court did not err in dismissing the Title VII suit against Sebastian and Sevieri in their personal capacities.

2. Prima Facie Showing

■ {10} In a Title VII suit, a plaintiff is first required to establish, by a preponderance of the evidence, a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once a plaintiff has established a prima facie case, this creates a presumption that the employer unlawfully discriminated against the employee. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). As a result, a finding of discrimination against the employer is required unless the employer offers a legitimate and nondiscriminatory explanation for its behavior. *See id.* If the employer presents some admissible evidence which articulates a nondiscriminatory reason for the adverse employment action, the plaintiff then has the opportunity to demonstrate that the articulated reason was merely a pretext. *See id.* at 254–56, 101 S.Ct. 1089. The plaintiff has the ultimate burden of proving that a discriminatory employment practice occurred. *Id.* at 256, 101 S.Ct. 1089.

{11} *McDonnell Douglas Corp.* sets forth the elements most commonly used to establish a prima facie case. *McDonnell Douglas Corp.* requires a plaintiff in a discrimination suit to prove (1) that the plaintiff belongs to a protected class; (2) that the plaintiff applied for and was qualified for a job; (3) that the plaintiff was rejected; and (4) that after the plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *See* 411 U.S. at 802, 93 S.Ct. 1817.

{12} In its motions for summary judgment, KLSK alleged that Plaintiff did not satisfy the minimal requirements of a prima facie case of sex discrimination under *McDonnell Douglas Corp.* Specifically, KLSK argued that Plaintiff could not show (1) that she was qualified for the management position; (2) that she applied for the position; and (3) that after she was passed over, the position remained open. The trial court found that Plaintiff had not established a prima facie case because she was not qualified for the position and she could not establish that the position remained open after she was passed over.

{13} Plaintiff argues that the trial court erred in ruling that she did not establish a prima facie case of discrimination. Plaintiff contends that a plaintiff may establish a prima facie case of discrimination either by meeting the *McDonnell Douglas Corp.* elements just described or, in the alternative, by presenting direct or statistical evidence of discrimination. *See, e.g., Smith v. FDC Corp.,* 109 N.M. 514, 518, 787 P.2d 433, 437 (1990) (interpreting the New Mexico Human Rights Act). Plaintiff claims that she presented direct evidence of sex discrimination and thus satisfied the alternative test. Plaintiff presented evidence that KLSK had no female managers and that women were excluded from management meetings while male employees were permitted to participate. Plaintiff also presented evidence that she was referred to as the "sales bitch"—a derogatory and offensive term used against women. *Cf. id.* at 519, 787 P.2d at 438 (referring to employee as "old man" could be evidence of age-based animus and of discriminatory intent).

{14} We need not decide whether Plaintiff succeeded in establishing a prima facie case of discrimination through direct evidence because we hold that the trial court erred in its finding that Plaintiff did not meet the *McDonnell Douglas Corp.* elements. As noted above, *McDonnell Douglas Corp.* establishes the traditional formula of a prima facie case of discrimination. As the Supreme Court has acknowledged, however, the facts will vary in Title VII cases, and the specific elements of the formula are dependent upon the type and circumstances of the employment action under attack. *See McDonnell Douglas Corp.,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."); *see also Smith,* 109 N.M. at 518, 787 P.2d at 437 (stating that "not all factual situations will fit into any one type of analysis, although unlawful discrimination may nevertheless be present"). For example, *McDonnell Douglas Corp.* involved a challenge to a hiring decision. *See id.* at 796, 93 S.Ct. 1817. Thus, the plaintiff in that case was required to show that he was a member of a protected class, that he applied for and was qualified for the position he was denied, and that the employer continued to seek applicants after he was rejected. *See id.* at 802, 93 S.Ct. 1817.

{15} In this case, Plaintiff claims that Defendants discriminated against her when they failed to promote her to a position for which she was qualified. A failure-to-promote case involves different factual circumstances than the failure-to-hire scenario in *McDonnell Douglas Corp.* The Tenth Circuit has articulated the showing needed to establish a prima facie case of discrimination in a failure-to-promote case. In such a case, a plaintiff must show (1) that she was a member of a protected class, (2) that she was qualified for the position, (3) that she was rejected, and (4) that the position was filled by someone who was not a member of the protected class. *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1469 (10th Cir.1992); *see also Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1510 (10th Cir.1997); *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1362 (10th Cir.1997) (stating that in a failure-to-promote case, a plaintiff establishes a prima facie case of discrimination when she shows " 'there were promotional opportunities available that were filled by males, that she was qualified for promotion, and that despite her qualifications she was not promoted' ") (quoting *Nulf v. International Paper Co.,* 656 F.2d 553, 558 (10th Cir.1981)).

{16} It is undisputed that Plaintiff, a woman, is a member of a protected class. It is also undisputed that Plaintiff did not receive the promotion which was given to a male employee—someone who is not a member of the protected class.

{17} Nevertheless, the trial court found that Plaintiff failed to establish a prima facie case of discrimination because she could not show that KLSK continued to seek applicants for the position after rejecting her. We hold that it was error for the trial court to apply this *McDonnell Douglas Corp.* factor so rigidly to this situation. The specific facts of a case must be considered in determining whether a plaintiff has established a prima facie case of discrimination, and not a general formulation which was never intended to apply to every situation. *See Loyd v. Phillips Brothers, Inc.*, 25 F.3d 518, 523 (7th Cir.1994) ("The factual setting of a dispute, not an abstracted formulation never intended to be all things to all cases, will determine what steps a plaintiff needed to have taken" to demonstrate discrimination.). Indeed, in this case the evidence shows that KLSK did not solicit applications but undertook to fill the position without notifying Plaintiff that it was being filled. Thus, under these facts, Plaintiff was only required to show that the position was filled by a male employee.

{18} KLSK also argues that Plaintiff did not apply for the promotion and thus cannot establish another of the *McDonnell Douglas Corp.* factors. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir.1992) (noting that there was no inference of discrimination when plaintiff did not apply for or inform company of his interest in position); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir.1985) (stating that employee must do more than show a general interest in a position). Plaintiff did not apply for the management position. Nonetheless, Plaintiff argues that at the time she was hired she professed an interest in management and that Sebastian promised to consider her for any future opening. Plaintiff further claims she was not told that the sales manager position was being filled; nor was

she told that she had to "apply" in order to be considered for that position.

{19} In this type of situation, we hold that Plaintiff's failure to apply does not preclude her from pursuing relief under Title VII. A plaintiff "should not be penalized for failing to apply for a specific job as long as the record suggests, as a reasonable inference, that [she] would have applied for specific positions had [she] known of their availability." *Taylor v. Canteen Corp.*, 69 F.3d 773, 781 (7th Cir.1995). In this case, KLSK's general manager was aware of Plaintiff's interest in management and promised to consider her for an opening. Additionally, when Plaintiff learned that a male employee was promoted to a management position, she complained to Sebastian and Sevieri about their failure to interview or consider her for the position. Plaintiff reminded the two men of her interest in management and of Sebastian's promise to consider her for an opening. Thus, it is a reasonable inference that if Plaintiff had known the position was open and that applicants were being sought, she would have applied. Indeed, it appears that Plaintiff is claiming that she was prevented from applying for the position by the very discriminatory practices she is protesting. *See Loyd*, 25 F.3d at 523 ("If the plaintiff alleges that the employer's decision not to approach people of her status was itself illegitimately motivated and shows that but for such a practice she likely would have been approached, then all she must do ... is establish that, had the employer approached her, she would have accepted the offered position.").

{20} Furthermore, viewing the factual allegations in the light most favorable to a trial on the merits, we also hold that Plaintiff has shown that she was qualified for the managerial position and that the trial court erred in concluding to the contrary. Plaintiff presented evidence of her background in sales, her training, her education, and her excellent sales record at the station. KLSK argues, and the trial judge appeared to agree, that Plaintiff was not as qualified as the male employee who was promoted. Nevertheless, "in order to establish a prima facie case a plaintiff need not show that he or she

is equally or better qualified than the person selected for the position[.]" *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 797 (10th Cir.1993), *overruled in part on other grounds by Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir.1995) (per curiam). As the Tenth Circuit recognizes, imposing this burden on a plaintiff at the outset may make the "task of establishing a prima facie case unnecessarily difficult." *Id.* Concededly, this factor will become important if KLSK asserts this as their reason for promoting the male employee over Plaintiff. *See id.* ("the court may have to grapple with that factor in determining whether the defendant's reasons are pretextual"); *see also Thomas*, 111 F.3d at 1510 (stating that an "employer's subjective reasons are not properly considered at the prima facie stage, and should instead be 'considered in addressing whether those articulated reasons are legitimate or merely a pretext for discrimination'") (citing *Ellis v. United Airlines Inc.*, 73 F.3d 999, 1005 n. 8 (10th Cir.1996)). We hold that a comparison of the qualifications does not preclude Plaintiff from establishing a prima facie case, and the trial court erred in so concluding.

{21} Because Plaintiff established a prima facie case and thus created a presumption of discrimination, the burden now shifts to KLSK to produce evidence that Plaintiff was not promoted, or someone else was preferred, for a legitimate, nondiscriminatory reason. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. We anticipate that Defendants' nondiscriminatory reason for promoting the male employee instead of Plaintiff will be what KLSK claims are the male employee's superior qualifications. Assuming that KLSK asserts this as the reason for Plaintiff's rejection, KLSK would be entitled to summary judgment unless Plaintiff "produces either direct evidence of discrimination or evidence that the defendant[s'] proffered reason for the action taken was pretextual." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1397 (10th Cir.1997); *see also Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir.1997) (stating that if the defendant offers a legitimate reason for the challenged action, "the plaintiff must then present evidence raising a genuine issue that his termination was the result of [discrimination] or

that the reason offered by [the defendant] was a mere pretext"); *Durham v. Xerox Corp.*, 18 F.3d 836, 839–40 (10th Cir.1994) ("Although a prima facie case combined with disproof of the employer's explanation does not prove intentional discrimination as a matter of law, it may permit the factfinder to infer intentional discrimination, and thus preclude summary judgment for the employer."). Plaintiff has already produced evidence as part of her prima facie case—no women managers, women excluded from meetings, referring to her as "sales bitch"—that may also be considered as direct evidence of discrimination or evidence of pretext. *See Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089. Reasonable inferences that a jury might draw from such evidence would appear to preclude summary judgment for KLSK under the cases cited above because there are genuine issues of material fact that must be resolved at trial. Thus, we reverse the summary judgment for KLSK on the Title VII claim. We express no opinion on the likelihood that Plaintiff will ultimately carry her burden with the fact finder.

## B. DEFAMATION

{22} Plaintiff also asserts that the trial court erred in granting summary judgment on her claim of defamation against Defendants KLSK, Sebastian, and Sevieri. Plaintiff contends that Sebastian and Sevieri drafted and mailed a letter to her employer, Premier, which called Plaintiff a liar, a gossip, and a problem employee. Defendants counter that Plaintiff has failed to show that the letter was published or that any actual damages resulted from such publication. *See* UJI 13–1002 NMRA 1998 (elements of defamation action require, in part, for the plaintiff to prove that the defendant published a defamatory communication and that plaintiff was proximately injured by the communication). We disagree with Defendants' position and the ruling of the trial court on this point.

{23} If a defamatory statement is made to a person who knows that the statement is untrue, then a publication has not occurred. *See* UJI 13–1003 NMRA 1998; *Martinez v. Sears, Roebuck & Co.*, 81 N.M. 371, 375, 467 P.2d 37, 41 (Ct.App.1970). De-

fendants argue that Windmueller, Plaintiff's supervisor at Premier and the person to whom the letter was sent, did not believe the letter's contents. Defendants refer to Windmueller's deposition in which he stated that he did not trust Sevieri.

{24} A review of Windmueller's deposition, however, reveals the existence of conflicting material facts regarding what Windmueller believed as to the truth or falsity of the statements in the letter. Windmueller testified that he was upset when he received the letter which branded Plaintiff a problem employee because KLSK had given her a good employment reference. Windmueller did not unequivocally state whether or not he believed the charges, but rather stated that he investigated the allegations and found them to be untrue. Defendants fail to explain why Windmueller would be upset or why he would investigate the allegations if he absolutely believed the allegations were false. In considering a motion for summary judgment, all factual matters are viewed in the light most favorable to the party opposing summary judgment. Thus, the fact that contradictory inferences may be drawn from Windmueller's testimony concerning what he believed renders summary judgment inappropriate. *See Furgason v. Clausen,* 109 N.M. 331, 340, 785 P.2d 242, 251 (Ct.App. 1989) ("[W]here affidavits or depositions are used to resist summary judgment and statements in the deposition give rise to conflicting inferences concerning factual issues, summary judgment should not be granted.").

{25} Defendants also argue that Plaintiff failed to show that she was proximately injured by the alleged defamatory statements. We disagree. Windmueller testified that Plaintiff became ineffective in the sales market. Windmueller explained that Sebastian and Sevieri spread rumors to media buyers which attacked Plaintiff's reputation and made it difficult for her to secure advertising promotions for Premier. Defendants argue that Windmueller should not be allowed to give his opinion on Plaintiff's inability to secure advertising promotions because he is not an expert. However, as Plaintiff's immediate supervisor, Windmueller is certainly qualified to testify how Plaintiff's ability to carry out her job was affected by the alleged defamation.

{26} There are also issues of material fact concerning Sevieri's role in writing the letter. Sevieri denies helping Sebastian draft the letter and denies that he saw the letter before it was mailed. On the other hand, Sebastian testified that Sevieri may have helped him draft the letter and that Sevieri read the letter before it was mailed. This conflicting evidence regarding Sevieri's role in writing the letter makes summary judgment for him inappropriate. *See Blauwkamp v. University of New Mexico Hosp.,* 114 N.M. 228, 234–35, 836 P.2d 1249, 1255–56 (Ct.App.1992) ("Issues involving the weight to be accorded to the testimony of a witness are not properly resolved by summary judgment."). Summary judgment for Sevieri is also inappropriate because Plaintiff has alleged that Sevieri made damaging statements to others which harmed her reputation. Thus, we reverse the summary judgment of the trial court as to KLSK, Sebastian, and Sevieri on the claim of defamation.

## C. INTERFERENCE WITH CONTRACTUAL RELATIONS

{27} Plaintiff has briefed this issue only in regard to Sevieri (and his employer at the time, KASY) who she claims accused her of intentionally making KASY's logo too small and as a result, Budweiser was dropped by the promoter as a co-sponsor of the Hunter's Expo event. Plaintiff argues that Sevieri's actions harmed her employment relationship because she became ineffective in securing promotional opportunities for Premier. Plaintiff further claims that there was a factual issue as to whether Sevieri acted with an improper motive which made summary judgment improper. Plaintiff does not claim that her employment relationship with Premier was anything other than at will. Thus, her claim is that Sevieri interfered with her prospective employment relationship with Premier. *See Kelly v. St. Vincent Hosp.,* 102 N.M. 201, 207, 692 P.2d 1350, 1356 (Ct.App.1984). Conversely, Sevieri and KASY claim that they had a legitimate business reason for rejecting the proposed billboard advertising.

{28} A claim for tortious interference with contractual relations that does not induce the breach of an existing contract is in the nature of a claim for interference with prospective business advantage, and it requires a plaintiff to prove that the defendant used improper means or acted with an improper motive intended solely to harm the plaintiff. *See id.* Therefore, Sevieri's motive in objecting to the size of the logo and withdrawing KASY's sponsorship must *solely* have been to harm Plaintiff. *See id.; Clough v. Adventist Health Sys., Inc.,* 108 N.M. 801, 806, 780 P.2d 627, 632 (1989).

{29} In this case, there was evidence that the promoter's contract stated that in exchange for KASY's sponsorship and promotion of the Hunter's Expo, their logo would be prominently displayed on all billboard advertising. Upon reviewing the proposed art work, which Plaintiff and Premier had prepared, KASY believed its logo was significantly smaller than Budweiser's, which the record shows it was. To the extent that KASY believed its logo was not prominently displayed, it had a legitimate business reason for pulling its sponsorship. *See Kelly,* 102 N.M. at 207, 692 P.2d at 1356; *Clough,* 108 N.M. at 806, 780 P.2d at 632. Furthermore, KASY sent a letter to the promoter explaining KASY's reason for withdrawing its sponsorship. This letter did not accuse Plaintiff of any wrongdoing; nor did it accuse her of intentionally making the logo too small.

{30} Additionally, we acknowledge that Plaintiff has introduced evidence that the promoter told her that Sevieri accused her of intentionally making the logo too small. Contrary to KASY's argument, this statement is not hearsay because Plaintiff is not offering it to show that she actually did make the logo too small, but rather that Sevieri accused her of this. *See State v. Alberts,* 80 N.M. 472, 474–75, 457 P.2d 991, 993–94 (Ct. App.1969). We also acknowledge that Plaintiff introduced evidence that the logo matter came up "after the fact" because of possible ill will between Sevieri and Premier. However, this evidence does not show any improper motive against Plaintiff, and Plaintiff has not shown that KASY did not gain a larger logo because of the incident. Thus,

we conclude that KASY and Sevieri acted at least in part with a legitimate business purpose in objecting to the size of their logo. *See Kelly,* 102 N.M. at 207, 692 P.2d at 1356; *Clough,* 108 N.M. at 806, 780 P.2d at 632. Thus, there was no material issue of fact to support Plaintiff's claim of tortious interference with her prospective employment relations with Premier, and summary judgment was properly granted on this claim.

## D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

{31} Plaintiff sought damages for intentional infliction of emotional distress. A claim for intentional infliction of emotional distress requires a plaintiff to show that defendants engaged in extreme and outrageous conduct which was done recklessly or with the intent to cause severe emotional distress. *See Andrews v. Stallings,* 119 N.M. 478, 491, 892 P.2d 611, 624 (Ct.App.1995); *see also* UJI 13–1628 NMRA 1998. A plaintiff must also show that as a result of the conduct, she experienced severe emotional distress. *See* UJI 13–1628; *Jaynes v. Strong–Thorne Mortuary, Inc.,* 1998–NMSC–004, ¶ 20, 124 N.M. 613, 954 P.2d 45.

{32} Extreme and outrageous conduct is described as conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Phifer v. Herbert,* 115 N.M. 135, 139, 848 P.2d 5, 9 (Ct.App.1993) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)), *overruled on other grounds by Spectron Dev. Lab. v. American Hollow Boring Co.,* 1997–NMCA–025, ¶¶ 31–32, 123 N.M. 170, 936 P.2d 852. In this case, Plaintiff contends that Defendants KLSK, Sebastian, and Sevieri engaged in extreme and outrageous behavior when they (1) intentionally discriminated against her while she was employed at KLSK, (2) sent a defamatory letter to her employer, and (3) refused to do business with her thus negatively affecting her ability to perform her job. Defendants argue that Plaintiff's suit should be dismissed because the conduct alleged was neither extreme nor outrageous and because Plaintiff has failed to allege the

**510**

existence of any severe emotional distress. We do not address whether, as a matter of law, Defendants' conduct in this case was extreme and outrageous because we hold that Plaintiff has not shown that she suffered severe emotional distress.

■ {33} As the Supreme Court recently acknowledged, to recover on a claim for intentional infliction of emotional distress, a plaintiff's damages must be severe. *See Jaynes,* 1998–NMSC–004, ¶ 20, 124 N.M. 613, 954 P.2d 45. Severe emotional distress means that " 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.' " *Id.* (quoting *Folz v. State,* 110 N.M. 457, 469, 797 P.2d 246, 258 (1990)). In this case, Plaintiff has not alleged that she suffered severe emotional distress. In fact, Plaintiff's brief never discussed this requirement. Additionally, Plaintiff testified during her deposition, in response to the question of whether she was distressed by Defendants' conduct, that she felt she was "treated improperly." Improper treatment does not constitute severe emotional distress as contemplated under the tort. *See* UJI 13–1628; *Phifer,* 115 N.M. at 139–40, 848 P.2d at 9–10 ("The law intervenes *only* where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.") (quoting Restatement, *supra,* § 46 cmt. j) (emphasis added). Because Plaintiff has failed to show that she suffered severe emotional distress, we hold that the trial court did not err in granting summary judgment on the claim of intentional infliction of emotional distress.

**E. PRIMA FACIE TORT**

{34} Plaintiff argues that the district court erred in granting summary judgment in favor of Defendants on her claim of prima facie tort. Plaintiff contends that KLSK, Sebastian, and Sevieri intended to cause her injury when they discriminated against her and sent an alleged defamatory letter to her supervisor. Plaintiff also contends that KASY and Sevieri are liable under this theory for accusing her of intentionally making KASY's logo too small in the art work advertising the Hunter's Expo event and thereby causing her to become ineffective in securing promotional opportunities for Premier.

**1. Discrimination**

■ {35} "Prima facie tort occurs when a lawful act is conducted with an intent to injure and without sufficient economic or societal justification, resulting in injury." *Lexington Ins. Co. v. Rummel,* 1997–NMSC–043, ¶ 10, 123 N.M. 774, 945 P.2d 992. The commission of an intentional lawful act is the first element of a prima facie tort. *See Beavers v. Johnson Controls World Serv., Inc. .,* 120 N.M. 343, 348, 901 P.2d 761, 766 (Ct.App. 1995); *see also Schmitz v. Smentowski,* 109 N.M. 386, 396–97, 785 P.2d 726, 736–37 (1990) (prima facie tort requires an otherwise lawful act).

{36} Plaintiff contends that Defendants committed a prima facie tort when they intentionally discriminated against her on the basis of sex. If what Plaintiff alleges is true, however, then Defendants' conduct violated Title VII and would not constitute a lawful act necessary for a prima facie tort. *See Beeman v. Safeway Stores, Inc.,* 724 F.Supp. 674, 677 (W.D.Mo.1989) ("Intentional acts 'by reason of' sexual harassment and sexual discrimination are *unlawful* acts and thus not actionable, as a matter of law, under the prima facie tort theory."); *see also Greco v. Robinson,* 747 S.W.2d 730, 734–35 (Mo.Ct. App.1988) (affirming grant of summary judgment where plaintiffs alleged defendant had committed unlawful acts). Thus, the trial court properly dismissed the prima facie tort claim against KLSK, Sebastian, and Sevieri as regards the alleged discrimination.

**2. The Hunter's Expo Event**

■ {37} Plaintiff asserts that the circumstances surrounding the disapproval of the Hunter's Expo billboard advertising gave rise to a prima facie tort claim against KASY and Sevieri. Plaintiff explains that Sevieri's allegation that she intentionally made KASY's logo too small negatively affected her ability to secure future promotional opportunities for Premier. KASY argues that its conduct was motivated by a legitimate business concern.

{38} A prima facie tort claim requires the tortfeasor to "act maliciously, with the intent to cause injury, and without justification or with insufficient justification." *Schmitz*, 109 N.M. at 395, 785 P.2d at 735. This requires us to balance Defendants' malicious intent against the justification for the injurious act and the severity of the injury to determine whether a prima facie tort has been committed. *See id.*, at 394–95, 785 P.2d at 734–35. If there is no intent to injure, then there is no need to conduct the balancing test. *See Lexington Ins. Co.*, 1997-NMSC–043, ¶ 11, 123 N.M. 774, 945 P.2d 992. There is a heavy burden on plaintiffs to establish intent to injure. *Id.* ¶ 12.

{39} In this case, we hold that Plaintiff has not presented sufficient evidence from which to find a material issue of fact whether KASY acted with malicious intent when it protested the size of its logo on the billboards. Rather, as discussed previously, it appears that KASY and Sevieri were motivated by a legitimate business interest when they objected to the billboard advertising. *See id.* ¶ 15–16 (settlement agreement was motivated by a legitimate business purpose rather than a malicious intent to injure). KASY had a contract with the promoter which stated that KASY's logo would be prominently displayed on all billboard advertising. Thus, the trial court properly granted summary judgment in favor of KASY and Sevieri on this issue.

### 3. The Letter

{40} The final issue under this claim concerns whether KLSK, Sebastian, and possibly Sevieri committed a prima facie tort when they wrote an allegedly defamatory letter to Plaintiff's supervisor. Arguably these Defendants could have been acting with a legitimate business purpose when they wrote and mailed the letter to Plaintiff's supervisor. Sebastian claims that he wrote the letter to improve business relations with Premier. However, the comments in the letter which refer to Plaintiff as a liar, a gossip, and out of control raise a question whether Defendants' conduct "fell outside the ambit of legitimate employer behavior." *Beavers*, 120 N.M. at 350, 901 P.2d at 768. Thus, we hold

that there are material issues of fact concerning whether Defendants were acting with a legitimate business purpose or whether the comments attacking Plaintiff were gratuitous.

### F. RETALIATION

{41} In the docketing statement, Plaintiff contended that the district court erred in granting summary judgment on her claim of retaliation. This issue has not been briefed. Issues raised in the docketing statement and not briefed are deemed abandoned. *See State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.1985).

### CONCLUSION

{42} We reverse the judgment of the trial court as to: (1) the Title VII claim against KLSK, (2) the defamation claim against KLSK, Sebastian, and Sevieri, and (3) the prima facie tort claim against KLSK, Sebastian, and Sevieri. The entry of summary judgment is affirmed as to: (1) all claims against KASY, (2) the interference-with-contract claim against Sevieri, (3) the Title VII claim against Sevieri and Sebastian, (4) the claim for intentional or negligent infliction of emotional distress as to all Defendants, and (5) the retaliation claim.

{43} **IT IS SO ORDERED.**

BOSSON and BUSTAMANTE, JJ., concur.