This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**SHARLA BRADLEY,**

Plaintiff-Appellant,

v.                                        **NO. 27,936**

**LOVELACE SANDIA HEALTH SYSTEM,**
**a foreign corporation doing business in**
**New Mexico,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ted Baca, District Judge**

Gilpin & Keefe, P.C.
Donald G. Gilpin
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
R. Nelson Franse
Albuquerque, NM

Epstein Becker & Green, P.C.
Patrick F. Clark
Amelia M. Willis
Atlanta, GA

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

During 2004, Appellant Sharla Bradley worked as a billing clerk in the central billing office of Appellee Lovelace Sandia Health System. In September of that year, she experienced a bout of severe depression that culminated in a failed overdose attempt. Bradley sought treatment at the Lovelace emergency room, was discharged the same evening, and was ordered by her doctor to take some time off. While recuperating, she determined that her Lovelace coworkers had accessed her medical records in the computer billing system and knew of her overdose. Embarrassed, she did not return to work and chose instead to file suit against Lovelace for prima facie tort, intentional infliction of emotional distress, and invasion of privacy. The district court dismissed her claim for prima facie tort prior to trial and later dismissed her other claims pursuant to a judgment as a matter of law. The court also refused to allow her amended complaint for punitive damages and excluded hearsay testimony at trial. Bradley appeals. For the reasons set out below, we affirm the district court on all issues.

**BACKGROUND**

Bradley began working at Lovelace as a temporary employee in July 2003. She then transitioned to a permanent billing clerk position in the central billing office in January 2004. On September 6, 2004, she overdosed and was admitted to Lovelace's emergency room. Her supervisor permitted her to convalesce at home, and during that time, Bradley spoke with coworker and friend, Eleanor Madrid, on the telephone. Madrid asked Bradley how she was feeling, and when Bradley indicated that she felt fine, Madrid asked, "Are you sure? . . . Because I heard that you were in the emergency room because you had taken a lot of pills." Bradley then asked Madrid how she knew about the overdose. Madrid replied, "You know how people whisper around here. . . . You know how the girls are." Bradley understood "the girls" to refer to her coworkers, Dolly Aragon and Grace Baca. Aragon had a reputation for discussing the personal lives of other Lovelace employees, and based on a later conversation with Madrid, Bradley began to suspect that Aragon and Baca had learned of her overdose by improperly accessing her medical information in the Lovelace computerized billing system.

That her coworkers knew of her overdose embarrassed Bradley, and she quit her job as a result. She reported the incident to Becky Falance, Lovelace's Human Resources Director, and to Ann Greenberg, Lovelace's Director of Privacy and HIPAA Compliance. Falance and Greenberg then began an internal investigation.

They first identified each employee who had information relevant to Bradley's complaint: Madrid, Dennis Lovato, Selena Romero, Aragon, and Baca. They then interviewed each person, and at the conclusion of their investigation, Falance and Greenberg published a report. In the report, they stated that the investigation was unable to establish whether Bradley's patient records were improperly accessed in September 2004. Despite this fact, they found that Bradley had a habit of discussing her personal health condition with coworkers and that, on other occasions, Bradley and her coworkers together accessed her records in order to confirm that she was correctly billed for medical services. Employee Baca admitted to once accessing Bradley's file in order to obtain Bradley's mobile phone number. The report concluded that the accesses prior to September 2004 constituted violations of Lovelace policies and practice and recommended: (1) disciplinary measures against all offending employees, and (2) privacy refresher training for all employees in the central billing office

All employees who either accessed Bradley's record or knew of an access and did not report it were disciplined by Lovelace. Baca was counseled in writing for accessing Bradley's phone number, and Lovato, Romero, Madrid, and Aragon were counseled orally for not reporting the violation. Lovelace conducted these counselings with the aim of making "sure [the employees] understood the seriousness

of the allegation and what their responsibilities were as far as HIPAA." In an October 2004 letter, Lovelace formally notified Bradley of the investigation's results and generally described the disciplinary and remedial measures it took as a consequence.

Bradley filed suit against Lovelace on March 23, 2005. Her complaint demanded compensatory damages against Lovelace for prima facie tort, intentional infliction of emotional distress, and invasion of privacy. The parties engaged in discovery, and on June 2, 2006, Lovelace filed a motion for summary judgment, which was granted in part when the district court dismissed Bradley's claim for prima facie tort.

In her complaint, Bradley originally sought only compensatory damages. She asked to be compensated for past and future "earnings she would have received" and "mental anguish and humiliation." After the parties completed discovery, Bradley filed a pre-trial motion in limine dated December 1, 2006. In it, Bradley made clear that she was seeking "lost wages, lost benefits, emotional distress damages and *punitive damages*." Lovelace responded by filing a motion to dismiss Bradley's punitive damages claim as untimely. The court granted Lovelace's motion.

On June 18 and 19, 2007, the district court held a jury trial. During Bradley's case in chief, she sought to admit the testimony of Lovato. He would have testified that Romero told Aragon about an improper access of Bradley's medical records in

September 2004. The district court sustained Lovelace's objection to the testimony on the basis that it was hearsay within hearsay. At the close of Bradley's case in chief, Lovelace made a motion for a judgment as a matter of law on the issue of intentional infliction of emotional distress, which the district court granted. Later, at the close of its own case in chief, Lovelace moved for another judgment as a matter of law on the issue of whether it could be held vicariously liable for the intentional torts of its employees and on Bradley's claim for invasion of privacy. The district court granted Lovelace's motion on the issue of vicarious liability, and as a result, likewise granted Lovelace a judgment as a matter of law on the issue of invasion of privacy.

Bradley appeals and argues that the district court erred in a number of ways. She contends that it improperly granted Lovelace's motion for summary judgment on the issue of her prima facie tort claim. Likewise, she claims that she should have been given leave to amend her complaint to include a claim for punitive damages. She argues that the district court improperly excluded the testimony of Lovato and that it improperly dismissed her claim for intentional infliction of emotional distress. Finally, Bradley urges us to reverse the district court's finding that Lovelace's employees were not acting within the course and scope of their employment, and she argues that the court should not have dismissed her claim for invasion of privacy. We analyze each argument below and affirm the district court.

**DISCUSSION**

**1. Prima Facie Tort**

Bradley first asserts that the district court improperly granted summary judgment to Lovelace on her claim of prima facie tort. We review a district court's grant of summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Summary judgment constitutes an appropriate remedy "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* When reviewing summary judgments, we entertain all reasonable inferences and view "the facts in a light most favorable to the party opposing the motion." *Gushwa v. Hunt*, 2008-NMSC-064, ¶ 9, 145 N.M. 286, 197 P.3d 1 (internal quotation marks and citation omitted).

The doctrine of prima facie tort allows tort claims to proceed against defendants whose tortious acts do not fit neatly within common law categories. *Bogle v. Summit Inv. Co.*, 2005-NMCA-024, ¶ 22, 137 N.M. 80, 107 P.3d 520. As our Supreme Court has held, prima facie tort "provides a remedy for plaintiffs who have been harmed by a defendant's intentional and malicious acts," even where those acts fall outside the elements of traditional common law torts. *Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990).

7

Prima facie tort may be pled in the alternative, but if the district court determines that the facts of the case would be more properly submitted under an established tort, it must dismiss the claim. *Id.* at 396, 785 P.2d at 736. Prima facie tort must "not be used to evade stringent requirements of other established doctrines of law." *Bogle*, 2005-NMCA-024, ¶ 22 (internal quotation marks and citation omitted); *Healthsource, Inc. v. X-Ray Assoc. of N.M.*, 2005-NMCA-097, ¶ 35, 138 N.M. 70, 116 P.3d 861; *Stock v. Grantham*, 1998-NMCA-081, ¶ 38, 125 N.M. 564, 964 P.2d 125. A plaintiff's prima facie tort claim must be dismissed if it is "duplicative of . . . other claims" or used to evade "proof of essential, and appropriate, elements" of such claims. *Stock*, 1998-NMCA-081, ¶ 39. A prima facie tort will "not lie when the pleaded factual basis is within the scope of an established tort." *Healthsource, Inc.*, 2005-NMCA-097, ¶ 35.

Assuming the claim adequately crosses this threshold, plaintiffs who assert prima facie tort must prove the following elements: (1) the defendant committed an intentional, lawful act; (2) the act was intended to injure the plaintiff; (3) the act did, in fact, injure the plaintiff; and (4) the defendant committed the act without sufficient justification. *Bogle*, 2005-NMCA-024, ¶ 22. In addition to these elements, courts considering prima facie tort must also balance the claimed tortious conduct "against its justification and the severity of the injury, weighing: (1) the injury; (2) the

8

culpable character of the conduct; and (3) whether the conduct is unjustifiable under the circumstances." *Schmitz*, 109 N.M. at 394, 785 P.2d at 734. The alleged tortious conduct must also be wrongful or generally improper and unjustifiable in nature. *Id.* at 394-95, 785 P.2d at 734-35. In addition to balancing these factors, New Mexico courts must also consider "(1) the nature and seriousness of the harm to the injured party, (2) the nature and significance of the interests promoted by the actor's conduct, (3) the character of the means used by the actor and (4) the actor's motive." *Id.* at 395, 785 P.2d at 735 (internal quotation marks and citation omitted).

Our examination of the record reveals no separate factual basis for Bradley's claim of prima facie tort. Indeed, it would appear that Bradley's prima facie tort claim relies upon the exact same factual basis as her claims for intentional infliction of emotional distress and invasion of privacy. In establishing all three, she cites the actions of her coworkers, the alleged inaction of Lovelace, the doctrine of respondeat superior, and the harm these events caused to her. Her response to Lovelace's motion for summary judgment is illustrative. She stated, "Therefore, if the [c]ourt determines that the actions of [Lovelace] are not in violation of New Mexico law for [i]nvasion of [p]rivacy and [i]ntentional [i]nfliction of [e]motional [d]istress, then Plaintiff would have the ability to pursue her [p]rima [f]acie [t]ort [c]laim."

Our case law firmly establishes the impropriety of such pleading. In *Stock*, the plaintiff asserted a variety of claims, including both prima facie tort and intentional infliction of emotional distress. 1998-NMCA-081, ¶ 36. As in the present case, both claims were based upon identical facts, so that the plaintiff was using prima facie tort, essentially, as a fall-back claim. *Id.* ¶ 38. We stated that we will "not recognize a claim of intentional infliction of emotional distress in the absence of the outrageous conduct required for that tort, even if the plaintiff relabeled the cause of action as prima facie tort." *Id.* (internal quotation marks omitted). "The only function of the claim of prima facie tort in [her] complaint is to escape possible restrictions imposed on the tort[] of intentional infliction of emotional distress." *Id.*

Bradley argues that she pleaded her claim for prima facie tort in the alternative, and as such, the district court improperly dismissed it. The issue should have gone to the jury, she contends, because her coworkers' conduct fits within the elements of prima facie tort. We hold that the district court correctly granted Lovelace's motion for summary judgment on this issue. Foremost, based on the facts before the district court at the time it considered Lovelace's motion, neither the conduct of Lovelace nor the conduct of Bradley's coworkers fit the elements of prima facie tort. Where Bradley asserted that Lovelace improperly maintained its computer system or failed to provide HIPPA training to its employees, she fails to establish Defendant's *intent*

to injure her. *See Bogle*, 2005-NMCA-024, ¶ 22. Where, on the other hand, she asserted her coworkers' improper access of her records, she fails to establish a *lawful act*. *Id.* In either case, Bradley fails to establish at least one element of prima facie tort, and dismissal was required by the district court as a matter of law. *See Silverman v. Progressive Broad., Inc.*, 1998-NMCA-107, ¶ 36, 125 N.M. 500, 964 P.2d 61 (where we held that a district court properly dismissed the plaintiff's prima facie tort claim at the summary judgment stage because the facts in the record failed to establish one element).

**2.      Punitive Damages**

Bradley next argues that the district court erred when it refused her leave to amend her pleadings with a claim for punitive damages. She relies on Rule 1-015(A) NMRA, noting that a party may amend its complaint until such time as the jury receives the case. We agree insofar as Bradley's statement is factually correct, but her reliance on Rule 1-015(A) fails to acknowledge that such amendments are granted "only by leave of the court or by written consent of the adverse party." Rule 1-015(A). As our Supreme Court held in *Constructors, Ltd. v. Garcia*, the decision of whether to grant a party leave to amend rests in the sound "discretion of the [district] court." 86 N.M. 117, 118, 520 P.2d 273, 274 (1974). A district court abuses this discretion when its actions exceed "the bounds of reason, all the circumstances before

11

it being considered." *Martinez v. Ponderosa Prods., Inc.*, 108 N.M. 385, 386, 772 P.2d 1308, 1309 (Ct. App. 1988) (emphasis omitted) (internal quotation marks and citations omitted). And we will not reverse a district court's ruling under this standard unless its "decision is clearly untenable, or when it is clearly contrary to the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). When analyzing for abuse of discretion, we examine the entire record, not only those facts that favor the plaintiff. *Minor v. Homestake-Sapin Partners Mine*, 69 N.M. 72, 73-74, 364 P.2d 134, 135 (1961).

The district court did not abuse its discretion by disallowing Bradley's punitive damages claim. In her original complaint, dated March 23, 2005, Bradley sought relief for prima facie tort, intentional infliction of emotional distress, and invasion of privacy. As compensation, she asked the court to award compensatory damages for past and future "earnings she would have received" and for "mental anguish and humiliation."

Bradley never formally moved for leave to amend her complaint. She waited until discovery was complete and then included a claim for punitive damages in her motion in limine. Neither did she demonstrate any intent to seek punitive damages during the discovery phase of the case, nor have we located any facts in the record to suggest that any new evidence prompted her claim. Lovelace's interrogatory No. 6,

asked Bradley to "[i]dentify with specificity and particularity each and every element and item of damage . . . that you contend you are entitled to recover." In her response, Bradley stated her intent was to seek "Lost Wages, Benefits, Emotional Distress, and Costs." She made no mention of punitive damages. Likewise, during her deposition, Bradley never mentioned punitive damages.

A year and a half after her original complaint, after the conclusion of discovery, Bradley raised the issue of punitive damages in passing, in her pre-trial motion in limine filed on December 1, 2006. In that document, which purported to state the "factual basis of plaintiff's claims," Bradley made clear that she was seeking "lost wages, lost benefits, emotional distress damages and punitive damages." Naturally, Lovelace was somewhat caught off-guard by this new development, and on December 27, 2006, it filed a motion to dismiss Bradley's punitive damages claim as untimely. Prior to trial, the court denied Bradley's request to seek punitive damages.

Thus, in this case, the district court refused to consider a claim for punitive damages—raised months after the conclusion of discovery—where no new evidence had arisen to implicate such damages. Bradley never filed a formal motion to amend under Rule 1-015(A). Not having pled a claim for punitive damages, and having only implied such a claim's existence, the district court was well within its discretion when it barred her tardy attempt to assert one. We cannot say that such a refusal

contravenes the bounds of reason and logic, such as to create an abuse of discretion. We affirm.

**3.     Vicarious Liability**

We consider now the issue of vicarious liability because it constitutes the dispositive basis upon which all remaining issues depend.  Bradley argues that Lovelace should be held vicariously liable for the actions of its employees and contends that the district court ruled improperly that Lovelace was not liable as a matter of law.  She puts forward a twofold argument.  First, she asserts that her coworkers acted within the course and scope of their employment when they viewed her private medical information.  Second, she argues that even if her coworkers were acting outside the course and scope of their employment, Lovelace ratified or condoned their conduct by not taking more decisive disciplinary, preventative, and remedial actions.

At the close of Lovelace's case in chief, the district court entered a directed verdict that Bradley's coworkers were not acting within the course and scope of their employment and that Lovelace did not ratify their conduct.[1]  Such verdicts are granted

---

[1]Lovelace denies that its employees accessed Bradley's records in September of 2004 and points to its internal investigation for support.  The district court never reached the issue, assuming as it did, that even if Bradley's coworkers did access her records in September 2004, they were acting outside of the course and scope of their employment.

14

when "there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of a party." *Hedicke v. Gunville*, 2003-NMCA-032, ¶ 9, 133 N.M. 335, 62 P.3d 1217 (filed 2002). We review a district court's entry of a directed verdict de novo. *Id.*

**A.    Course and Scope of Employment**

Bradley argues that her coworkers acted in the course and scope of their employment with Lovelace when they improperly accessed her medical information. She contends that, at the very least, reasonable minds could differ, and therefore the issue should have been submitted to the jury. Generally, an employer bears no liability for the intentional torts of an employee. *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 29, 135 N.M. 539, 91 P.3d 58. However, an employer may be held liable when its employees commit intentional torts in the course and scope of their employment. *Los Ranchitos v. Tierra Grande, Inc.*, 116 N.M. 222, 226, 861 P.2d 263, 267 (Ct. App. 1993). Employees commit intentional torts within the course and scope of their employment when their acts are "naturally incident to the business" for which they were employed and are done "with a view to further the [employer's] interests." *Id.* (internal quotation marks and citation omitted). An employee's intentional torts are not within the course and scope of employment when they "arise wholly from some external, independent, and personal motive" done "upon his own account." *Id.*

15

(emphasis omitted) (internal quotation marks and citation omitted). Committing an intentional tort on company time, from one's seat on company premises, does not necessarily mean the tort was committed within the course and scope of employment. The question of whether an employee acted within the course and scope of his duties is usually a question of fact, but when no reasonable trier of fact could differ on the issue, a district court may grant judgment as a matter of law. *Rivera v. N.M. Highway & Transp. Dep't*, 115 N.M. 562, 564, 855 P.2d 136, 138 (Ct. App. 1993).

In *Rivera*, the plaintiff sought to impose vicarious liability on his employer, the New Mexico Highway and Transportation Department. *Id.* at 563, 855 P.2d at 137. While working on a highway project, the plaintiff and his coworkers took a break while awaiting more materials to finish the job. During this lull in the work, one of the plaintiff's coworkers threw a container of water at the plaintiff and prompted him to jump out of the way. In so doing, the plaintiff entered the roadway and was struck by a vehicle. *Id.* The defendant had published rules, prior to the incident, prohibiting such conduct. *Id.* The district court held that the defendant was not liable because its employee was not acting within the course and scope of his duties; and although the issue at trial was whether the defendant had waived sovereign immunity under the New Mexico Tort Claims Act, we reviewed the case under the more stringent requirements of respondeat superior. *Id.* at 563-64, 855 P.2d at 137-38. We held that

the employee tortfeasor was not acting within the course and scope of his employment because "the act of throwing water on [the p]laintiff . . . was not done with a view of furthering the employer's interest" and arose "from purely personal motives." *Id.* at 564, 855 P.2d at 138; *Los Ranchitos*, 116 N.M. at 226, 861 P.2d at 267; *Benham v. All Seasons Child Care, Inc.*, 101 N.M. 636, 638, 686 P.2d 978, 980 (Ct. App. 1984).

Bradley introduced no evidence at trial to indicate that her coworkers accessed her records with the purpose of furthering the interests of Lovelace. Her case in chief included only evidence that her coworkers accessed her records. Because she presented no evidence at trial that her coworkers were furthering Lovelace's interests at the time of the access, no reasonable fact finder could conclude that they were acting within the boundaries of their employment. Accordingly, we affirm the result reached by the district court on the issue of course and scope.

**B.     Employer Ratification or Assent**

Bradley contends that even if we hold against her on the issue of course and scope, we should nevertheless hold Lovelace liable because it ratified and condoned the tortious conduct of its employees. Even where an employee acts outside the course and scope of his employment, the employer may still be held liable if it assents to or ratifies the conduct. *See Los Ranchitos*, 116 N.M. at 226, 861 P.2d at 267. As with course and scope, ratification is generally a matter of factual determination for

17

the jury except where reasonable minds could not differ. *N. v. Pub. Serv. Co. of N.M.*, 97 N.M. 406, 409, 640 P.2d 512, 515 (Ct. App. 1982).

Bradley argues that Lovelace ratified its employees conduct by failing to conduct proper employee training prior to the event, by failing to maintain a more secure computer system, and by failing to adequately discipline the guilty employees after the event. She introduced evidence, that although Lovelace employees received training on the impropriety of accessing patient files, Lovelace's training program was somewhat less intensive than programs offered by other hospitals. The court also heard evidence concerning the Lovelace computer system, which was incapable of automatically detecting whether an improper access had occurred. And although Bradley asserts that Lovelace failed to discipline the employees for their conduct, the record clearly indicates that Baca received a written reprimand for accessing Bradley's file on another occasion and that all other employees who failed to report improper accesses were orally reprimanded.

Lovelace argues that it did not ratify the conduct of its employees, and at trial it offered evidence that it had preventative measures in place prior to the event, that its computer system was password protected, that remedial measures were taken after the incident, and that all offending employees were disciplined. All new employees at Lovelace were familiarized with privacy procedures at the time of hiring and were

required to sign a statement that they had read the code of conduct, which prohibited improper access of patient records. Access to the Lovelace computer system was password protected, and all employees were required to log off when they left their desk. Also, employees were only given access to those areas of the computer system required by their individual positions. Upon being notified of Bradley's complaint, Lovelace conducted an internal investigation into the matter, and although it was unable to determine if an improper access occurred in September 2004 it determined that other improper accesses had otherwise occurred and disciplined those employees accordingly. After Bradley's complaint, Lovelace also conducted mandatory privacy training for all 300 employees in its central billing office.

Bradley cites no case law to support her position that Lovelace's acts or failures to act constituted a ratification. We therefore assess only the evidence before the district court and hold that reasonable minds could not differ on whether Lovelace ratified the conduct of its employees. In fact, the evidence presented at trial indicates just the opposite. Both before and after the events which gave rise to this appeal, Lovelace took measures to prevent improper access of patient files, and we hold that the district court properly granted a directed verdict on this issue.

**4.    Hearsay Testimony**

We now consider Bradley's argument that certain testimony of Lovato was erroneously excluded as hearsay. Bradley offered Lovato's testimony to prove that her medical information was improperly accessed. Lovato would have testified that Romero told Aragon about Bradley's file being accessed. Lovelace objected on the basis that the evidence was hearsay within hearsay], and after an extended exchange outside the hearing of the jury, the court sustained on that basis. Both Aragon and Romero denied that they made the statements.

We review the exclusion of evidence at trial for abuse of discretion. *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999. The party against whom the district court ruled must prove on appeal that the "exclusion of evidence was prejudicial in order to obtain a reversal." *Cumming v. Nielson's, Inc.*, 108 N.M. 198, 204, 769 P.2d 732, 738 (Ct. App. 1988). We will not hold that a district court abused its discretion "unless we can characterize [its ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (filed 1998) (internal quotation marks and citation omitted).

Bradley argues that the district court incorrectly classified Lovato's testimony as hearsay within hearsay. The hearsay rule does not apply, Bradley contends, because the statements of both Aragon and Romero were those of party opponents and were therefore not hearsay. In support of her argument, she cites Rule 11-

20

801(D)(2)(d) NMRA and Rule 11-805 NMRA. Rule 11-805 provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Rule 11-801(D)(2)(d) provides that statements made by a "party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" qualify as statements by a party opponent, and therefore, are not hearsay.

The district court found Lovato's testimony to be hearsay within hearsay, and we agree. Bradley's argument would be persuasive if Aragon and Romero had been speaking of "a matter within the scope" of their employment. *Id*. But they were not discussing such a matter. They were discussing the fact that Bradley's personal medical information had been improperly accessed. And as we held above in our analysis of respondeat superior, Bradley's information—assuming it was accessed—was accessed by her coworkers outside the course and scope of their employment. Any discussion of it was likewise outside the course and scope of employment. Thus, we cannot hold that the district court abused its discretion when it excluded the testimony. We affirm.

**5.      Intentional Infliction of Emotional Distress**

21

At the conclusion of Bradley's case in chief, Lovelace moved for a directed verdict on her claim for intentional infliction of emotional distress. The district court granted the motion on the basis that Lovelace's actions were not "extreme and outrageous" and therefore failed the elements of the tort. Bradley argues that the district court's ruling was improper and that she presented sufficient evidence to support her claim. We agree with Bradley, insofar as the basis upon which the district court granted Lovelace's motion was faulty. Nevertheless, we affirm because the district court was "right for the wrong reason." *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2008-NMCA-153, ¶ 35, 145 N.M. 328, 198 P.3d 354. We review a district court's entry of a directed verdict do novo. *Hedicke*, 2003-NMCA-032, ¶ 9.

In order to state a claim for intentional infliction of emotional distress, a plaintiff must establish: (1) the extreme and outrageous nature of the defendant's conduct, (2) that the defendant acted intentionally or with reckless disregard for the plaintiff, (3) that the plaintiff's mental distress was extreme and severe, and (4) that the plaintiff's emotional distress was caused by the defendant's conduct. *Trujillo v. N. Rio Arriba Elec. Coop.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333 (filed 2001). Our caselaw defines extreme and outrageous conduct as conduct that "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Id.* (internal quotation marks and citation omitted). When deciding whether a claim may go forward under the tort of intentional infliction of emotional distress, the district "court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery." *Id.* ¶ 26 (internal quotation marks and citation omitted). If reasonable minds could differ on whether the facts meet this standard, the district court should allow the case to proceed. *Id.*

In her case in chief, Bradley attempted to establish that the actions of her coworkers were extreme and outrageous. She then sought to prove that those actions were either done in the course and scope of employment or were ratified by Lovelace. The district court was therefore required to determine, first, whether the employees' conduct was extreme and outrageous, and second, whether Lovelace ratified or condoned it. But at the time it announced its ruling, the district court had done neither. It considered the employees' alleged outrageous conduct to be of no consequence. The court stated, "looking . . . up [someone's private medical records] might be [extreme and outrageous], but you didn't sue the people who looked them up. The question is whether what Lovelace did, if anything, was extreme and outrageous." The court then went on to analyze Lovelace's conduct, finding that it was neither extreme nor outrageous. But the court confused its analysis of intentional

infliction of emotional distress with the doctrine of respondeat superior, as the following statement by the court illustrates:

> "Well, the intentional infliction of emotional distress, to tell you the truth, I am inclined to grant [Lovelace's] motion. The only way you think that they may have condoned [the behavior of their employees] is because they didn't have a tracking system, and I am not prepared to say that not having a tracking system is extreme and outrageous conduct."

The record indicates that the district court erroneously analyzed this issue. The court should have first determined whether Bradley's evidence was sufficient to support the claim that her coworkers acted outrageously. Next, the court should have turned to the issue of respondeat superior, or failing that, left the issue to be decided later in the trial. Instead, the court refused to consider whether Lovelace's employees acted outrageously and focused on the actions of Lovelace. The actions of Lovelace, however, were only relevant to the extent they tended to prove Lovelace's ratification of its employees' allegedly outrageous acts. It was therefore improper to analyze them under the extreme and outrageous standard.

Though the district court analyzed this issue improperly, it's faulty analysis was cured later when it found that as a matter of law Lovelace was not vicariously liable for the actions of its employees. We may affirm a district court where it is right for the wrong reason, and we do so here. *Capco Acquisub, Inc.,* 2008-NMCA-153, ¶ 35; *see Romero v. Prince*, 85 N.M. 474, 476, 513 P.2d 717, 719 (Ct. App. 1973).

24

**6.      Invasion of Privacy**

Finally, we review Bradley's argument that the district court improperly dismissed her claim for invasion of privacy as a matter of law. She contends that the actions of her coworkers constituted a publication of private facts, and as such, the issue should have been submitted to the jury. We review a district court's entry of a directed verdict do novo. *Hedicke*, 2003-NMCA-032, ¶ 9.

Bradley offered no evidence at trial that Lovelace, itself, published her private facts. Her theory instead focused on proving the culpability of her coworkers and imputing it to Lovelace through the doctrine of vicarious liability. Above, we held that the district court correctly found that as a matter of law Lovelace neither ratified nor condoned the conduct of its employees in this case. Likewise, we held that the district court properly found that those employees were not acting in the course and scope of their employment at the time they accessed Bradley's private information. Based on the evidence presented at trial, vicarious liability would be the only way to sound a valid claim against Lovelace for invasion of privacy. Accordingly, because we hold that Lovelace is not vicariously liable, we affirm the district court's dismissal of Bradley's invasion of privacy claim.

25

**CONCLUSION**

We affirm on all issues and hold that the district court: (1) properly granted summary judgment to Lovelace on Bradley's claim of prima facie tort; (2) did not abuse its discretion when it denied Bradley leave to amend her complaint with a claim for punitive damages; (3) properly held that, as a matter of law, Lovelace was not vicariously liable for the intentional torts of its employees; (4) did not abuse its discretion when it refused to allow hearsay within hearsay evidence at trial; (5) properly dismissed Bradley's intentional infliction of emotional distress claim; and (6) properly dismissed Bradley's invasion of privacy claim.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL E. VIGIL, Judge**